IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE M. MILLER BAKER, JUDGE

| | |  |
|---|---|---|
| THE UNITED STATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 21-361 |
| | ) | |
| | ) | |
| CROWN CORK & SEAL, USA, INC. | ) | |
| and CROWN CORK & SEAL CO., INC., | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED COMPLAINT

The United States, through its undersigned attorneys, brings this action and alleges the following:

1. This is an action to enforce monetary civil penalties pursuant to 19 U.S.C. § 1592.

2. Pursuant to 28 U.S.C. § 1582, this Court possesses exclusive jurisdiction to entertain this action.

3. Crown Cork & Seal Company, Inc. (CCS) is a Pennsylvania corporation, founded in 1892, with a business address of 770 Township Line Road, Yardley, Pennsylvania 19067.

4. Since its inception more than 100 years ago, CCS has sold metal lids for food, beverage, household and consumer products.  CCS has been importing merchandise into the United States since at least 1994, and since then has filed or

caused to be filed import documents with the U.S. Government relating to, among other things, the metal lids which are the subject of this litigation.

5. CCS is a wholly owned subsidiary of Crown Holdings, Inc.

6. Crown Holdings, Inc. is a Pennsylvania corporation, with a business address of 770 Township Line Road, Yardley, Pennsylvania 19067.

7. Crown Holdings describes itself as a worldwide leader in the design, manufacture and sale of packaging products for consumer goods. Crown Holdings' primary products include steel and aluminum cans for food, beverage, household and other consumer products, and a wide variety of metal and plastic lids, closures and dispensing systems.

8. Crown, Cork & Seal, USA (CCS USA) is a Delaware corporation, with a business address of 770 Township Line Road, Yardley, Pennsylvania 19067.

9. In 1996, CCS created and fully capitalized CCS USA with substantially all of the assets of CCS's U.S. businesses, including its facilities and inventory. CCS USA was created as a direct subsidiary of CCS. In 1998, CCS USA began importing merchandise into the United States, including the metal lids which are the subject of this litigation. Like CCS, CCS USA sells metal lids for food, beverage, household and consumer products.

10. During the time frame of the importations of the metal lids at issue, CCS, CCS USA and Crown Holdings regularly interacted with each other and with

other Crown Holdings companies that manufactured the subject metal lids.  CCS and CCS USA were both subsidiaries of Crown Holdings, and for some time, CCS and Crown Holdings each operated under the same President, Secretary, and Treasurer.  All three companies operated out of the same business address.  Crown Holdings owned and controlled the European manufacturers of the subject metal lids imported by CCS and CCS USA.

      11.     From on or about June 27, 2004, through on or about May 11, 2009 ("subject period"), defendants CCS, CCS USA, and their co-conspirators caused to be entered or introduced (or attempted to enter or introduce) into the commerce of the United States certain merchandise, consisting of metal end/lids for cans ("metal lids"), under cover of 543 entries ("subject entries") that are identified in Exhibit A to this complaint, and used false and fraudulent statements to avoid paying duties on these 543 subject entries.

      12.     For each of the 543 false entries made by CCS and CCS USA, Exhibit A to this complaint details the specific circumstances underlying each entry, including:  (1) the person who made the false entry (*i.e.*, CCS or CCS USA); (2) the entry number; (3) the correct subheading under the Harmonized Tariff Schedule of the United States ("HTSUS")  that should have been used by CCS and CCS USA to enter the subject metal lids; (4) the duty rate associated with the correct HTSUS subheading; (5) the date the subject metal lids were entered into the United

States; (6) where – *i.e.*, the port at which – these falsely classified metal lids entered the United States; (7) the fact that CCS and CCS paid no duties on the metal lids falsely classified; (8) the exact amount of duties that CCS and CCS USA should have paid for the metal lids they imported, if they had been correctly classified; (10) the total revenue lost as a result of CCS or CCS USA's false statement; and (11) the value of the metal lids underlying the entry.

13. CCS and CCS USA caused these 543 false statements to be made to the Government by submitting or causing to be submitted information containing HTSUS subheadings which falsely classified the metal lids they imported.

14. CCS and CCS USA subsequently admitted to the Government that they falsely classified all of the 543 entries at issue.

15. Like most importers of record, CCS and CCS USA used licensed customs brokers to file the paperwork needed to enter the merchandise they imported into the United States. The customs brokers used by CCS and CCS USA to enter the subject metal lids never possessed, observed, or otherwise controlled any of the subject metal lids. Instead, these customs brokers relied exclusively upon representations from CCS, CCS USA, and companies and agents affiliated with CCS and CCS USA, for descriptions, entry information and classifications relating to these metal lids. The customs brokers used by CCS and CCS USA to submit false information to CBP about the proper classification of these metal lids

understood that CCS and CCS USA each bore responsibility for submitting true and accurate statements to U.S. Customs officials about the metal lids that they imported into the United States.

16.     CCS and CCS USA understood that, as importers of record, they each bore responsibility for submitting true and accurate statements to U.S. Customs officials, including true and accurate information classifying the subject metal lids. CCS and CCS USA ultimately made the decisions to falsely classify these metal lids, and their brokers entered the false classification information of the metal lids based upon these decisions by CCS and CCS USA.

17.     On 543 separate occasions identified in Exhibit A to this complaint, CCS and/or CCS USA knowingly entered metal lids into the commerce of the United States by means of material false statements, acts, or omissions. The correct tariff classification of these metal lids under the HTSUS was subheading 8309.90.0000. Companies which imported metal lids under HTSUS subheading 8309.90.0000 were ordinarily required to pay a 2.6 percent *ad valorem* duty rate on this merchandise.

18.     CCS and CCS USA knew that the subject metal lids were supposed to be classified under HTSUS subheading 8309.90.0000. This subheading definition used the same three words that form the corporate names of both CCS and CCS USA:  "Crown," "corks" and "seals": "Stoppers, caps and lids (including **crown**

**corks**, screw caps, and pouring stoppers), capsules for bottles, threaded bungs, bung covers, **seals** and other packing accessories, and parts thereof, of base metal: Other [than Crown corks (including **crown seals** and caps), and parts thereof]."

19. The agents and employees of CCS, CCS USA, and affiliated companies which supplied information used to misclassify the subject metal lids, were acting within the scope of their authority at these companies.

20. During the subject period, CCS and CCS USA imported metal lids manufactured by companies with which they were affiliated – Crown Holdings' subsidiaries located in several European countries, including Great Britain, France, Italy and Spain. During that same time frame, CCS and CCS USA also imported metal lids from an affiliated Crown Holdings company in Canada.

21. During the subject period, the North American Free Trade Agreement ("NAFTA") eliminated duties for metal lids. Consequently, defendants CCS and CCS USA were not required to pay duties on metal lids imported from Canada entered under HTSUS subheading 8309.90.0000.

22. CCS and CCS USA each demonstrated that they were aware of how to properly classify the subject metal lids they imported. During the subject period, CCS and CCS USA used the correct HTSUS subheading (8309.90.0000) more than 99 percent of the time when importing metal lids from Canada. Of 3,055 lines of metal lids they entered from Canada during the subject period, CCS and CCS USA

entered 3,051 lines of merchandise under HTSUS subheading 8309.90.0000, while only entering four lines of merchandise under HTSUS subheading 7326.90.1000.

23. However, when importing the same type of metal lids from Europe during the same time frame, CCS and CCS USA used an incorrect HTSUS subheading (7326.90.1000) more than 99 percent of the time. CCS and CCS USA falsely misclassified metal lids from Europe using HTSUS subheading 7326.90.1000: "Other articles of iron or steel: Other: Of tinplate." No duties were required to be paid on goods entered under this HTSUS subheading.

24. Thus, by falsely classifying the metal lids under HTSUS subheading 7326.90.1000, CCS and CCS USA were able avoid paying the 2.6 percent duty rate due on metal lids they imported from Europe.

25. In addition, defendants CCS and CCS USA falsely identified the importer of record name and/or the importer of record number on entry documents for the subject entries.

26. The false statements referenced in paragraphs 11 through 25 were material in that they had the potential to impact the determinations of U.S. Customs and Border Protection (CBP) regarding the true importer/owner of the merchandise and the amount of duty owed on the entries.

27. The false statements referenced in paragraphs 11 through 25 were made by defendants CCS USA and CCS knowingly, and thus fraudulently,

because, in contrast to their classification of the 543 subject entries of metal lids from affiliated Crown Holdings companies in Europe, during the subject period, defendants CCS and CCS USA imported identical or similar shipments of metal lids from affiliated companies Canada, and correctly described and classified those metal lids as, "Stoppers, caps and lids (including crown corks, screw caps, and pouring stoppers), capsules for bottles, threaded bungs, bung covers, seals and other packing accessories, and parts thereof, of base metal: Other [than Crown corks (including crown seals and caps), and parts thereof]" under HTSUS subheading 8309.90.0000.

28.   The material false statements referenced in paragraphs 11 through 25 constitute violations of 19 U.S.C. § 1592(a).

29.   As a direct result of CCS and CCS USA filing false documents with CBP, the United States was deprived of $1,114,786.81 in lawful duties and fees, all of which have subsequently been paid.

30.   On August 8, 2016, CBP issued a joint pre-penalty notice to CCS and CCS USA for the Subject Entries, notifying CCS and CCS USA of violations of 19 U.S.C. § 1592(a) relating to the entry of 543 entries merchandise that were misclassified by CCS and CCS USA between June 27, 2004 and May 2009.  CBP issued the pre-penalty notice at culpability levels of fraud, and alternatively, gross negligence and negligence.

31. CBP received responses from defendants through their legal counsel. After considering the responses, CBP determined that defendants CCS and CCS USA committed violations of 19 U.S.C. § 1592(a) for which a penalty should be issued. On March 6, 2017, CBP issued a joint penalty notice to CCS and CCS USA, notifying CCS and CCS USA of violations of 19 U.S.C. § 1592(a) relating to the entry of 543 entries merchandise that were misclassified by CCS and CCS USA between June 27, 2004 and May 2009. CBP issued the penalty notice at culpability levels of fraud, and alternatively, gross negligence and negligence. All petitions for mitigation have been decided by CBP in accordance with applicable laws and procedures.

32. Neither CCS nor CCS USA has paid any portion of the penalty assessed by CBP. Consequently, CCS and CCS USA remain jointly and severally liable to the United States for the full amount of the penalty demanded by CBP.

## COUNT I

33. The allegations contained in paragraphs 1 through 32 above are restated and incorporated by reference. The material false statements described in paragraphs 11 through 25 were committed, submitted, made, or caused by defendants CCS and CCS USA knowingly and, thus, constitute fraudulent violations of 19 U.S.C. § 1592(a)(1)(A).

34. As a result of the fraudulent violations of 19 U.S.C § 1592(a) described above, pursuant to 19 U.S.C. § 1592(c)(1), defendants CCS and CCS USA are jointly and severally liable for a monetary civil penalty in the amount of $18,092,348.96. The penalty is less than the domestic value of the subject entries. No part of the $18,092,348.96 having been paid, defendants CCS and CCS USA remain jointly and severally liable to the United States for the entire $18,092,348.96 penalty, plus interest as provided by law.

### COUNT II

35. Allegations contained in paragraphs 1 through 32 above are restated and incorporated by reference.

36. In the event that the jury determines that the acts described in paragraphs 11 through 25 were not the result of fraud, then they were the result of gross negligence in violation of 19 U.S.C. § 1592(a)(1)(A) because defendants CCS and CCS USA acted with actual knowledge of or wanton disregard for the relevant facts and with indifference to, or disregard for, their obligations under the customs laws.

37. By reason of these grossly negligent violations, pursuant to 19 U.S.C. § 1592(c)(2), defendants CCS and CCS USA are jointly and severally liable for a penalty in the amount of $5,169,242.56, plus interest as provided by law. The penalty is equal to four times the duties, taxes and fees of the entries listed in

Exhibit A, of which the United States was deprived or potentially deprived, and is less than the domestic value of the subject entries.

## COUNT III

38.     The allegations contained in paragraphs 1 through 32 above are restated and incorporated by reference.

39.     In the event that the jury determines that the acts described in paragraphs 11 through 25 were not the result of fraud or gross negligence, then they were the result of negligence in violation of 19 U.S.C. § 1592(a)(1)(A) because defendants CCS and CCS USA failed to exercise reasonable care and competence to ensure that statements made and information provided in connection with the importation of the merchandise were complete and accurate.

40.     By reason of these negligent violations, pursuant to 19 U.S.C. § 1592(c)(3), defendants CCS and CCS USA are jointly and severally liable for a penalty in the amount of $2,584,621.28, plus interest as provided by law.  That penalty is equal to two times the duties, taxes and fees of the entries listed in Exhibit A, of which the United States was deprived or potentially deprived, and is less than the domestic value of the subject entries.

## PRAYER FOR RELIEF

**WHEREFORE**, the United States respectfully requests that the Court enter judgment against defendants CCS and CCS USA, jointly and severally, for:

Count I:  violations of section 1592(a)(1)(A), at a culpability level of fraud, for a civil penalty in the amount of $18,092,348.96, plus interest as provided by law, and such other relief as may be just and appropriate; or, in the alternative;

Count II:  violations of section 1592(a)(1)(A) at a culpability level of gross negligence, a civil penalty in the amount of $5,169,242.56, plus interest as provided by law, and such other relief as may be just and appropriate; or, in the alternative;

Count III:  violations of section 1592(a)(1)(A) at a culpability level of negligence, a civil penalty in the amount of $2,584,621.28, plus interest as provided by law, and such other relief as may be just and appropriate.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General

PATRICIA M. McCARTHY
Director

/s/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

|  |  |
|---|---|
| OF COUNSEL:<br>PHILIP HISCOCK<br>Senior Attorney<br>U.S. Customs and Border Protection<br>Office of the Associate Chief Counsel<br>610 S. Canal St., Ste. 767<br>Chicago, IL 60607 | */s/ William Kanellis*<br>WILLIAM KANELLIS<br>U.S. Department of Justice<br>Civil Division<br>Commercial Litigation Branch<br>1100 L Street, NW, Suite 10000<br>Washington, D.C.  20009<br>(202) 532-5749<br><br>Attorneys for Plaintiff |

Dated:  June 8, 2022