UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

| | | |
|---|---|---|
| THE UNITED STATES, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| | ) | |
| v. | ) | Court No. 21-00361 |
| | ) | |
| CROWN CORK & SEAL, USA, INC. , | ) | |
| and CROWN CORK & SEAL CO., INC., | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

## ORDER

Upon consideration of Defendants' Partial Motion to Dismiss

Counts I and II of the Amended Complaint, Plaintiff's response thereto,

and upon consideration of all other papers and proceedings herein, it is

hereby:

ORDERED that Defendants' Partial Motion to Dismiss is

GRANTED; and it is further

ORDERED that Plaintiff's fraud claim (Count I) is dismissed **with**

**prejudice**; and it is further

ORDERED that Plaintiff's gross negligence claim (Count II) is dismissed **with prejudice**.

_____

The Hon. M. Miller Baker, Judge

Dated:_____, 2022
      New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

|  |  |  |
|---|---|---|
| THE UNITED STATES | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Court No. 21-00361 |
| | ) | |
| CROWN CORK & SEAL, USA, INC. , | ) | |
| and CROWN CORK & SEAL CO., INC. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

DEFENDANTS' MOTION TO DISMISS
COUNTS I AND II OF THE AMENDED COMPLAINT

Jackson D. Toof
Leah N. Scarpelli

**ArentFox Schiff LLP**
1717 K Street, NW
Washington, DC 20006
Tel: (202) 857-6000
Fax: (202) 857-6395
Email:  jackson.toof@afslaw.com
        leah.scarpelli@afslaw.com

*Counsel for Defendants Crown Cork
& Seal, USA, Inc. and Crown Cork
& Seal Co., Inc.*

Dated: June 22, 2022

# **TABLE OF CONTENTS**

I.     Introduction ............................................................................. 1

II.    Standard of Review ................................................................ 5

III.   ARGUMENT .......................................................................... 7

   A. The Court Should Dismiss the Government's Fraud Claim as a
      Matter of Law Because It Fails To Allege Any New Facts
      Evidencing Intent to Defraud CBP with the Requisite
      Particularity. ......................................................................... 8

      1. Fraud Must Be Pled With Particularity. ................................ 9

      2. The Government Has Added A New Allegation That Is
         Belied By The Facts It Knows But Continues To Ignore ........ 11

      3. The Government Has Not Pled Fraud With Requisite
         Particularity In Its Amended Complaint. ............................. 13

      4. Dismissal Is Consistent With Court Precedent In Other
         Cases Involving Fraud ....................................................... 22

   B. The Court Should Dismiss the Government's Gross Negligence
      Claim as a Matter of Law Because the Government Failed to
      State a Claim Upon Which Relief Can Be Granted. ................... 28

IV.    Conclusion ............................................................................ 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)......................................................... 5, 7, 20, 28

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544, 127 S. Ct. 1955 (2007) .............................................. 6, 17

*Cedars-Sinai Med. Ctr. v. Watkins,*
    11 F.3d 1573 (Fed. Cir. 1993) ............................................................ 6

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.,*
    514 F.3d 1063 (10th Cir. 2008) ......................................................... 11

*King Auto., Inc. v. Speedy Muffler King, Inc.,*
    667 F.2d 1008 (CCPA 1981) ............................................................. 10

*Schick v. United States,*
    31 C.I.T. 2017 (2007).......................................................................... 5

*Sioux Honey Ass'n v. Hartford Fire Ins. Co.,*
    672 F.3d 1041 (Fed. Cir. 2012) ........................................................ 28

*St. Paul Fire & Marine Ins. Co. v. United States,*
    6 F.3d 763 (Fed.Cir.1993) ................................................................ 28

*United States v. Am. Cas. Co. of Reading Pennsylvania*
    91 F. Supp. 3d 1324, 1335–36 (Ct. Int'l Trade 2015) ........................ 24

*United States v. Chow,*
    841 F. Supp. 1286 (Ct. Int'l Trade 1993)................................... 23, 25

*United States v. Cruzin Cooler, LLC,*
    459 F. Supp. 3d 1366 (Ct. Int'l Trade 2020)............................... 33, 34

*United States v. Ford Motor Co.*,
  29 C.I.T. 793 (2005), *aff'd in part, rev'd in part*, 463 F.3d
  1286 (Fed. Cir. 2006), judgment clarified, 31 C.I.T. 1178
  (2007)..................................................................................... 29, 30

*United States v. Great Neck Saw Manufacturers, Inc.*,
  Case No. 17-00049 (Ct. Int'l Trade 2018)........................ 30, 31, 32, 34

*United States v. Greenlight Organic, Inc.*,
  419 F. Supp. 3d 1298 (Ct. Int'l Trade 2019)................................ 23, 25

*United States v. Islip*,
  22 C.I.T. 852 (1998) ........................................................................ 24

*United States v. Islip*,
  22 CIT 852, 18 F.Supp.2d 1047 (1998) ........................................ 10, 24

*United States v. Nat'l Semiconductor Corp.*,
  30 C.I.T. 769, modified on reconsideration, 30 C.I.T. 1428
  (2006), vacated and remanded, 496 F.3d 1354 (Fed. Cir.
  2007)...................................................................................................... 12

*United States v. Nitek Elecs., Inc.*,
  844 F. Supp. 2d 1298 (Ct. Int'l Trade 2012), *aff'd*, 806 F.3d
  1376 (Fed. Cir. 2015) ............................................................................ 6

*United States v. Obron Atl. Corp.*,
  862 F. Supp. 378 (Ct. Int'l Trade 1994)................................................ 9

*United States v. Priscilla Modes, Inc.*,
  9 CIT 598 (1985) ................................................................................... 9

*United States v. Scotia Pharms. Ltd.*,
  33 C.I.T. 638 (2009) ............................................................................ 10

*United States v. Sterling Footwear, Inc.*,
  279 F. Supp. 3d 1113 (Ct. Int'l Trade 2017)................................. 33, 34

**Statutes**

19 U.S.C.A. § 1592(c) .................................................................................8

19 U.S.C. § 1592(a)(1)................................................................8

19 U.S.C. § 1592(c)(2)..............................................................31

19 U.S.C. § 1592(c)(3)..............................................................31

19 U.S.C. § 1592(c)(4)..............................................................12

19 U.S.C. § 1592(d)..................................................................3

19 U.S.C. § 1592(e)(2)...............................................................9

19 U.S.C. § 1592(e)(3)..............................................................29

19 U.S.C. § 1592(e)(4)..............................................................30

28 U.S.C. 1582........................................................................20

## Other Authorities

Rules of the United States Court of International Trade .............. *passim*

# GLOSSARY

| Acronym/Abbreviation | Item |
| --- | --- |
| Crown USA | Crown Cork & Seal, USA, Inc. |
| CCK | Crown Cork & Seal Co., Inc. |
| Defendants" or the "Crown Companies" | Crown Cork & Seal, USA, Inc. and Crown Cork & Seal Co., Inc. |
| Initial Motion to Dismiss | Motion to Dismiss Counts I and II of the Complaint [ECF No. 10] |
| CAFC | Court of Appeals for the Federal Circuit |
| USCIT or the Court | United States Court of International Trade |
| Plaintiff or Government | United States |
| CBP or Customs | U.S. Customs and Border Protection |
| HTSUS | Harmonized Tariff Schedule of the United States |
| NAFTA | North American Free Trade Agreement |
| USC | United States Code |
| USCA | United States Code Annotated |
| Can Ends | Easy Open Full Aperture Ends and metal vacuum closures |

Defendants Crown Cork & Seal, USA, Inc. ("Crown USA") and

Crown Cork & Seal Co., Inc. ("CCK") (collectively, "Defendants" or the

"Crown Companies"), pursuant to Rules 9(b) and 12(b)(6) of the Rules of

the United States Court of International Trade ("USCIT" or the

"Court"), respectfully submit this memorandum in support of their

*Motion to Dismiss Counts I and II of the Amended Complaint* filed by

Plaintiff the United States (the "Government").

## I.    INTRODUCTION

On May 19, 2022, the Court granted the Crown Companies' Initial

Motion to Dismiss (defined below) with leave to amend.  *See* Order [ECF

No. 22]. The Amended Complaint [ECF No. 23] filed by Plaintiff on

June 8, 2022, remains devoid of facts sufficient to support a claim for

fraud or even a claim for gross negligence. Indeed, as Your Honor

explained during oral argument:

> But in my view . . . this complaint does not arise to the level
> of showing a plausibility of such conduct.
> ***
> And I just don't think here on the face of this that you've
> gotten beyond mere possibility of gross negligence and fraud.

Hr'g Tr. (May 19, 2022) (Baker, J.), at 40:6-9, 12-14.  The Court's

analysis was true then, and it remains true today – the Amended

Complaint suffers from the same pleading deficiencies as the original Complaint, only this time the Court should dismiss Counts I and II *with prejudice* without leave to amend.

The Government has (i) had over a decade to investigate the Crown Companies' inadvertent misclassification of can ends, (ii) filed a Complaint notwithstanding the Crown Companies' efforts to resolve this matter extending back ten years, (iii) had its Complaint dismissed, and (iv) now come back a second time and filed an Amended Complaint with a few threadbare and inconsequential amendments in the vain hope of salvaging its fraud and gross negligence claims in order to extract a windfall penalty of almost 16 times the amount of duties and fees the Crown Companies have already paid to the Government in connection with this matter.  Try as it might, the Government has fallen short, again, as it has failed to produce any new material facts that save Counts I and II.

As noted in the Crown Companies' initial *Motion to Dismiss Counts I and II of the Complaint* [ECF No. 10] (the "Initial Motion to

<u>Dismiss</u>"),[1] this case arises from the Crown Companies' importation of Easy Open Full Aperture Ends and metal vacuum closures ("<u>can ends</u>") between 2004 and 2009.  Can ends (*e.g.*, the top piece to a soup can) are used in the manufacturing of two-piece and three-piece food and beverage cans in the United States. Since filing the first of two prior disclosures with U.S. Customs and Border Protection ("<u>CBP</u>") regarding the classification of can ends commencing in June 2009, the Crown Companies have for years worked earnestly and in good faith with CBP, a fact the Government continues to ignore presumably because it demonstrates the Crown Companies' good faith efforts to resolve this case.

Nevertheless, the Government commenced this action under Section 592 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1592(d), which allows the Government to set aside the finality of liquidation and to recover "withheld" duties, taxes, and fees of which the Government was "deprived," if it can establish that this deprivation occurred, by means of fraud or gross negligence.  As was true in its original

---

[1] Capitalized terms not otherwise defined herein have the meaning given to them in the Complaint.

Complaint, the Amended Complaint cannot even pretend there is

conduct that could raise its allegation of incorrect tariff classification

beyond a simple negligence claim. The Government's attempt to

shoehorn fraud and gross negligence claims into a set of facts that, at

most, state a claim at the pleading stage for negligence[2] should not be

countenanced. This is especially the case when those claims are

grounded in pure speculation and unsubstantiated allegations. Despite

having engaged in a decade-long investigation into the underlying facts,

with which the Crown Companies fully cooperated, and being given an

opportunity by the Court to amend its Complaint to better support its

allegations, the Government remains able to plead only bare, conclusory

elements of fraud and gross negligence. Am. Compl. ¶¶ 30 – 31.[3]

Those bare facts alone are insufficient to raise these claims above

a speculative level and are assuredly insufficient to support claims of

fraud or gross negligence. As the Supreme Court has made clear, such

conclusory pleading does not suffice to state a valid claim of fraud or

---

[2] The Crown Companies also dispute the Government's negligence claim and will
defend against it at the appropriate time.

[3] To the extent that the Crown Companies rely upon facts that the Government
recites in its Amended Complaint, the Crown Companies do so for the purposes of
this motion only.

gross negligence. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  The

Government has not followed the Court's directive and again fails to

plead fraud and gross negligence with requisite particularity pursuant

to Rule 9(b). Thus, for a second time, the Court should dismiss Counts I

and II of the Amended Complaint *with prejudice* as a matter of law, and

deny any request for leave to re-plead yet again.

## II.   STANDARD OF REVIEW

 "In ruling on a motion to dismiss for failure to state a claim upon

which relief can be granted, the court assumes that all well-pleaded

factual allegations in the complaint are true and draws all reasonable

inferences in the plaintiffs' favor." *Schick v. United States,* 31 C.I.T.

2017, 2020 (2007) (citing *Leider v. United States,* 301 F.3d 1290, 1295

(Fed.Cir.2002)). Plaintiff bears the burden of pleading the requisite

facts, including "a short and plain statement of the claim showing that

the pleader is entitled to relief." USCIT R. 8(a)(2). A cause of action may

be dismissed when the complaint fails "to state a claim upon which

relief can be granted." USCIT R. 12(b)(6).

To survive a motion to dismiss, "a complaint must contain

sufficient factual matter . . . to 'state a claim to relief that is plausible

on its face.'" *United States v. Nitek Elecs., Inc.*, 844 F. Supp. 2d 1298, 1302 (Ct. Int'l Trade 2012), *aff'd*, 806 F.3d 1376 (Fed. Cir. 2015). To be plausible, the complaint need not show a probability of plaintiff's success, but it must evidence more than a mere possibility of a right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1965 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *United States v. Nitek Elecs.,* 844 F. Supp. 2d at 1302.

In deciding a USCIT Rule 12 motion to dismiss for failure to state a claim upon which relief can be granted, the court assumes all factual allegations to be true and draws all reasonable inferences in the plaintiff's favor. *See Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583– 84 & n.13 (Fed. Cir. 1993). A plaintiff's factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *See Bell Atl.Corp. v. Twombly*, 550 U.S. at 555. Neither a "formulaic recitation of the elements of a cause of action," nor "naked assertions [of fact] devoid of further factual enhancement" would

be sufficient to withstand dismissal. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing* Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## III.   ARGUMENT

Based on the set of alleged facts in the Amended Complaint, which is essentially identical to the set of facts initially submitted, the Government continues to assert three counts against the Crown Companies pursuant to subsections (c)(1), (c)(2), and (c)(3) of 19 U.S.C. § 1592, respectively. In other words, the Government asserts that the conduct alleged in the Amended Complaint – conduct which this Court determined to be insufficient – rises to the level of fraud under 19 U.S.C. § 1592. Alternatively, according to the Government, if the same alleged conduct does not rise to the level of fraud, then, yet again, the Government alleges that it rises to the level of gross negligence. Further still, according to the Government, if the same alleged conduct does not rise to the level of gross negligence, then it at least rises to the level of negligence. As discussed below, the Government has overreached again.

The relevant statute, 19 U.S.C. § 1592(a)(1), states in pertinent part:

> [N]o person, by fraud, gross negligence, or negligence...may enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United States by means of...any document or electronically transmitted data or information, written or oral statement, or act which is material and false, or... any omission which is material.

Subsection (c) provides for penalties for violations of subsection (a) of the statute. 19 U.S.C.A. § 1592(c). Because "fraud, gross negligence, or negligence" is a required element of a claim under subsection (a), and, in turn, a claim under subsection (a) is a required element of a claim under subsection (c), the Government cannot properly state a claim under either subsection without alleging fraud, gross negligence, or negligence. At most, the Government has stated a claim for negligence under 19 U.S.C. § 1592. But it has, yet again, failed to plead sufficient facts to state a claim for fraud or for gross negligence, and the Court should dismiss Counts I and II of the Amended Complaint.

### A. The Court Should Dismiss the Government's Fraud Claim as a Matter of Law Because It Fails To Allege Any New Facts Evidencing Intent to Defraud CBP with the Requisite Particularity.

The Amended Complaint lacks sufficient facts or circumstances to satisfy the elements of the alleged fraud by the Crown Companies.

### 1.   Fraud Must Be Pled With Particularity.

An allegation of fraud by the Government carries a heightened burden of proof whereby the Government must "establish the alleged violation by clear and convincing evidence." 19 U.S.C. § 1592(e)(2). This more exacting "standard for establishing civil fraud provided in Customs' regulations requires the agency to demonstrate 'the material false statement or act in connection with the transaction was committed (or omitted) knowingly, *i.e.*, was done voluntarily and intentionally.'" *United States v. Obron Atl. Corp.,* 862 F. Supp. 378, 384 (Ct. Int'l Trade 1994) (quoting 19 C.F.R. Pt. 171, App. B(B)(3)).

The Court has found that "allegations of fraud will not be advanced lightly or without some factual basis." *United States v. Priscilla Modes, Inc.,* 9 CIT 598, 599 (1985) (quoting *Fulk v. Bagley*, 88 F.R.D. 153, 164 (M.D.N.C.1980)). To that end, USCIT Rule 9(b) requires that, "[i]n alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake." USCIT Rule 9(b) (emphasis added). The Court has emphasized that USCIT Rule 9(b) requires stating with particularity "circumstances" regarding matters such as time, place, and contents of the false representations or

9

omissions, as well as the identity of the person making the misrepresentation or failing to make a complete disclosure and what the defendant obtained thereby. *United States v. Scotia Pharms. Ltd.*, 33 C.I.T. 638, 645 (2009). "Most courts have required the claimant to allege at a minimum the identity of the person who made the fraudulent statement; the time, place, and content of the misrepresentation; the resulting injury; and the method by which the misrepresentation was communicated." *United States v. Islip*, 22 CIT 852, 869, 18 F.Supp.2d 1047, 1063 (1998) (citing 2 Moore's Federal Practice § 9.03, at 9–18 n. 12 (3d ed. 1998)).

Construing the analogous Fed. R. Civ. P. 9(b), the Court of Appeals for the Federal Circuit ("CAFC") similarly found that "[a] pleading that simply avers the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation, does not satisfy Rule 9(b)." *See King Auto., Inc. v. Speedy Muffler King, Inc.*, 667 F.2d 1008, 1010 (CCPA 1981) ("Rule 9(b) requires that the pleadings contain explicit rather than implied expression of the circumstances constituting fraud."). Although Rule 9(b) permits "knowledge" and "intent" to be pleaded more generally,

the CAFC has further held that Fed. R. Civ. P. 9(b) "requires that the pleadings allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *Id.* at 1327. Well-pled facts are defined as those that are "plausible, non-conclusory and non-speculative." *See Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citing *Twombly*, 550 U.S. at 553-56, 127 S. Ct. at 1964-65).

### 2.    The Government Has Added A New Allegation That Is Belied By The Facts It Knows But Continues To Ignore.

The Government, in an attempt to satisfy the heightened pleading standard for fraud, adds a new allegation:

> [Defendants] subsequently admitted to the Government that they falsely classified all of the 543 entries at issue.

Am. Compl. ¶ 14. But the Government, which has spent the better part of a decade investigating this matter, knows this new allegation is simply not true. The Crown Companies have never "admitted to the Government that they falsely classified all of the 543 entries at issue." Ever.

The Government, again, fails to acknowledge in the Amended Complaint that the Crown Companies promptly filed **voluntary**

11

**disclosures *in 2009*** when they became aware of potential erroneous classifications.[4] And, now, the Government intentionally misrepresents the meaning of those voluntary disclosures, for reasons unknown to the Crown Companies. Indeed, contrary to the Government's claim, such voluntary disclosures are not an admission of fraud, Am. Compl. ¶ 14, but rather a lawful mechanism for importers to report the circumstances of a violation to CBP before commencement of a formal investigation and thereby to correct an error of which it has become aware and limit its potential penalty liability. *See* 19 U.S.C. § 1592(c)(4). In past cases, the Court has recognized that "a voluntary disclosure by definition speaks highly of a defendant's good faith effort to comply with the statute, as the government agrees." *United States v. Nat'l Semiconductor Corp.*, 30 C.I.T. 769, 771, modified on reconsideration, 30 C.I.T. 1428 (2006), vacated and remanded, 496 F.3d 1354 (Fed. Cir. 2007). In this case, the Crown Companies' good faith is further evidenced by their cooperation with CBP's investigation for more than 10-years, their payment of lawful duties and fees owed, and

---

[4] The Crown Companies realized that such misclassifications had occurred and made corrections through the prior disclosure process, but in no way is this CBP-sanctioned process for correcting unintentional mistakes tantamount to conceding that the Crown Companies were "falsely classifying" the goods at issue.

their participation in the penalty mitigation process, as acknowledged by the Government. Am. Compl. ¶¶ 29, 31.

### 3. The Government Has Not Pled Fraud With Requisite Particularity In Its Amended Complaint.

The Government has failed to allege anything new from which this Court may reasonably infer that the Crown Companies engaged in any fraudulent conduct with the requisite state of mind. The Government's mere reiteration of conclusory and formulistic assertions of fraud fail to satisfy the heightened pleading standard when alleging fraud. Significantly, in spite of having had years to investigate the can ends classification issue, in its Amended Complaint the Government still fails to identify a single fraudulent statement, let alone the time at which such a statement was made, the place where it was made, or the person who made it.

For example, the Amended Complaint repeatedly refers to the Crown Companies' inadvertent misclassification of can ends as "false statements," Am. Compl. ¶¶ 12, 13, 17, 26-28, 33, claiming that the Crown Companies "caused these 543 false statements to be made to the Government by submitting . . . information containing HTSUS

subheadings which falsely classified the metal lids they imported." Am. Compl. ¶ 13. However, categorizing misclassification of tariff entries as "false statements" implies intent where none exists and indeed none is shown in the Amended Complaint. If the table attached to the Amended Complaint identifying 543 inadvertently misclassified entries—without more—is sufficient to state a claim for fraud, as the Government contends, the implications will be groundbreaking. Am. Compl. ¶ 22. Exhibit A only includes the entry data without context or corroboration; contrary to the Government's claims, it does not provide the "specific circumstances underlying each entry," Am. Compl. ¶ 12 and Exhibit A.

Moreover, the Amended Complaint baselessly alleges:

The customs brokers used by CCS and CCS USA to enter the subject metal lids . . . . *relied exclusively* upon representations from CCS, CCS USA, and companies and agents affiliated with CCS and CCS USA, for descriptions, entry information and classifications relating to these metal lids.

CCS and CCS USA each demonstrated that they *were aware* of how to properly classify the subject metal lids they imported.

CCS and CCS USA *ultimately made the decisions* to falsely classify these metal lids, and their brokers entered the false classification information of the metal lids based upon these decisions by CCS and CCS USA.

Am. Compl. ¶¶ 15, 22 and 16, respectively (emphasis added). Yet

nowhere in the Amended Complaint does the Government allege facts

one might expect to substantiate these conclusory claims or to support a

claim for fraud, including, among other things:

- who any of these "agents" or "employees" were (*e.g.*, names, job titles, identity of the Crown company for which they worked) who supposedly (i) supplied "descriptions, entry information and classifications relating to these metal lids" or (ii) "were aware of how to properly classify the subject metal lids they imported";

- what information any of these unidentified "agents" or "employees" actually supplied in connection with the classification of the metal lids to their respective brokers that was "relied exclusively upon" by these brokers in their "classifications relating to these metal lids";

- what information any of these unidentified "agents" or "employees" actually supplied to their respective brokers in connection with the classification of the metal lids that demonstrate they "were aware of how to properly classify the subject metal lids they imported";

- any facts supporting the conclusory statement that these unidentified "agents" or "employees" were actually "aware of how to properly classify the subject metal lids they imported"; and/or

- who the brokers actually were for the Canadian imports and the European imports, respectively, including either the name of the companies or the individuals within the companies responsible for classifying the imports in question.

Instead, the Amended Complaint broadly and baselessly alleges that the Crown Companies "*knowingly*, and thus fraudulently" misclassified can ends imported from Europe solely on the basis that certain (but not all) can ends imported from Canada by a separate, unrelated broker were classified correctly during the same period. Am. Compl. ¶¶ 17, 27 (emphasis added). The Government admits that the Crown Companies "used licensed customs brokers to file the paperwork needed to enter the merchandise they imported into the United States," Am. Compl. ¶¶ 15, but provides no new evidence that the divergent classifications were the result of any coordination between the Crown Companies and the independent brokers.

Moreover, and as noted in the initial Motion to Dismiss, the Government continues to omit the fact (which it knows given its 10 year investigation) that the Crown Companies relied on different, external unrelated customs brokers for entering the can ends imported from Canada and those from Europe during the Subject Period, instead steadfastly pinning its hopes of prevailing on claims of fraud or gross negligence on a single allegation: that most (but not all) of the can ends imported from Canada during the Subject Period were labeled with the

correct HTSUS subheading, and that most (but not all) of the can ends imported from Europe during the Subject Period were labeled with an incorrect HTSUS subheading. Am. Compl. ¶ 22.

The Government's fraud theory, *i.e.* that the misclassification was intentional in order to avoid the 2.6% *ad valorem* duties on imports from Europe, is undermined by a number of facts, including that:

- the Crown Companies took corrective action as soon as they became aware of the discrepancy in the classification of can ends, including by (i) filing prior voluntary disclosures, (ii) engaging private customs counsel to review tariff classifications and other customs procedures, (iii) hiring an experienced licensed customs broker to oversee the Crown Companies' customs filings, and (iv) developing a customs compliance program.

- Not every import from Canada was correct, Hr'g Tr. at 24:14-18, and not every import from Europe incorrect.  Mistakes happen. *See* Hr'g Tr. at 24:7-10 ("But as people like to say in Washington on a Friday night . . . mistakes were made.  Somebody made a mistake at least to some small fraction of those, correct?").  If the misclassification of can ends was intentional to avoid paying the 2.6% *ad valorem* duty, there would be no reason whatsoever to misclassify any imports from Canada since NAFTA eliminated the 2.6% ad valorem tax on imports from Canada. *See* Am. Compl. ¶¶ 21-24.[5]

---

[5] The Government has alleged that the misclassifications at issue were made "knowingly, and thus fraudulently" by the Crown Companies. Am. Comp. at ¶ 27. The "sufficiency" of this allegation "turns on the suggestions raised by this conduct when viewed in light of common economic experience." *Bell Atl. Corp. v. Twombly*, 550 U.S. at 546. As Your Honor observed, the Government's allegation asks the Court to accept that senior management of the Crown Companies reasoned: "Let's save $2.5 million on these imports, although our liability may be $50 million, and we could all go to jail. " Hr'g Tr. (Baker, J.), at 30:17-19. This behavior is

As further support for its fraud and gross negligence claims, the Government added a new allegation that the Crown Companies "knew that the subject metal lids were supposed to be classified under HTSUS subheading 8309.90.0000," because the "subheading definition used the same three words that form the corporate names of both [ CCS and Crown USA ]: 'Crown,' 'corks' and 'seals'". Am. Compl. ¶ 18. This absurd, unsubstantiated, and irrelevant statement misunderstands both (i) the product alleged to be fraudulently misclassified, *i.e.* can ends, which are wholly separate from crown corks or seals, and (ii) the HTSUS, which classifies crown corks and crown seals under HTSUS 8309.10.0000, not 8309.90.0000. HTSUS 8309.90.0000 in fact covers "other" stoppers, caps and lids, capsules for bottles, threaded bungs, bung covers, seals and other packing accessories, and parts thereof, of base metal. Am. Compl. ¶ 18. The classification at issue used by the Crown Companies for cans ends as "Other articles of iron or steel:

inconsistent with the common economic experience of *any* business, especially one as large and well-established as the Crown Companies.

Other: Of tinplate" under subheading 7326.90.1000 was less specific, but not facially incorrect.[6]

For the avoidance of doubt, below are the general products referenced:

| Crown Corks[7] | Can ends[8] |
|:---:|:---:|
|  |  |

Beyond these conclusory and speculative allegations, the Amended Complaint alleges no documentation, statements, or other facts evidencing the intent of anyone employed by the Crown Companies to defraud CBP. To the contrary, the Amended Complaint makes clear that there is no "common sense" motive for the Crown Companies, nor their agents, employees, or "co-conspirators," to

---

[6] Upon researching and reviewing with its Customs counsel, the HTSUS Explanatory Notes, and relevant CBP rulings, the Crown Companies realized for the first time that the subjects goods were misclassified.

[7] For an explanation of a "crown cork," *see*:  https://www.crowncork.com/beverage-packaging/crowns

[8] For an explanation of a "can end," *see*:  https://www.crowncork.com/food-cans/food-ends

perpetrate the fraud scheme alleged by the Government. Am. Compl. ¶ 11. In "determining whether a complaint states a plausible claim" the court is tasked with "draw[ing] on its experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). As the Government acknowledges, the Crown Companies are a "worldwide leader in the design, manufacture and sale of packaging products for consumer goods." Am. Compl. ¶ 7. As such, 543 entries over the course of five years represent only a very small fraction of the Crown Companies' U.S. can end sales, and an even smaller fraction total food can sales. Am. Compl. at ¶ 30. The 543 entries are even less significant in the context of the Crown Companies' total imports, and the associated "benefit" resulting from the 2.6 percent *ad valorem* duty rate on these entries is miniscule when compared to the Crown Companies' total sales during the relevant time period.[9] The Government has provided no "common

---

[9] While the Amended Complaint alleges that the Crown Companies "paid no duties on the metal lids falsely classified" and identifies "the total revenue lost as a result of CCS or CCS USA's false statement," Am. Compl. ¶ 12, it concedes that all of the lawful duties and fees associated with these entries "have subsequently been paid." Am. Compl. ¶ 29. The Crown Companies' non-payment of the penalty assessed by CBP at the culpability level of fraud is the result of the Government's rejection of all petitions for mitigation and has been fully explained in writing to the Government. Am. Compl. ¶ 31-32. In short, not paying the penalties assessed by CBP is the mechanism through which an action in this Court is triggered, which is what the Crown Companies wanted – a judge to decide the matter rather than capitulating to the unfounded and unreasonable demands of the Government. *See* 28 U.S.C. 1582

sense" motivation for the Crown Companies to perpetrate this alleged complex fraud scheme for such insignificant duty savings, nor has the Government demonstrated the presence of "kickbacks" or other incentives for duty savings that would justify either the Crown Companies or an individual employee unilaterally changing or causing to be changed the classification of imports to avoid additional duties.

That two related entities in a corporate structure of this size had inconsistent classifications and lacked oversight of different brokers handling shipments of can ends from two different parts of the world cannot elevate a simple error from a negligence claim to one of fraud or even gross negligence. The Government's assumption that the Crown Companies were inherently familiar with each other's tariff classifications because they operated out of the same business address and "for some time" under the same President, Secretary, and Treasurer similarly ignores the size and factual context of Crown's corporate organization and structure. Am. Comp. ¶ 10. What the

---

("Civil actions commenced by the United States.  The Court of International Trade shall have exclusive jurisdiction of any civil action which arises out of an import transaction and which is commenced by the United States-(1) to recover a civil penalty under section 592, 593A, 641(b)(6), 641(d)(2)(A), 704(i)(2), or 734(i)(2) of the Tariff Act of 1930.")

Government categorizes as "fraud" was in fact the consequence of company changes and a realignment of responsibilities, including a transition whereby Crown USA became the main importing entity for the Crown Companies. The reorganization of a company the size of Crown, which operates 185 manufacturing, sales, and service facilities in 43 countries, will inevitably involve some lag as the changes work their way through the tens of thousands of global employees of the corporate group. Given the size of the Crown Companies and the use of separate brokers for entries from Europe and Canada, a conclusory allegation that the Crown Companies knew that metal lids imported from Europe were classified differently than metal lids imported from Canada is simply insufficient as a matter of law to sustain a claim of fraud or gross negligence.

### 4. Dismissal Is Consistent With Court Precedent In Other Cases Involving Fraud

As detailed above, the Government bears the burden to establish fraud via clear and convincing evidence of an intent to deceive through specific acts. Where, as here, a plaintiff fails to state with specificity *who* was responsible for the allegedly fraudulent misstatements or *how* those allegedly fraudulent misstatements occurred, the Court has

granted a motion to dismiss under Rule 9(b). For example, in *United States v. Greenlight Organic, Inc.*, the Court dismissed fraud allegations as lacking the "requisite level of particularity" when the complaint failed to identify the "who, what, when, where, and how supporting the fraud claim," including "who made what statements that were false and material, or critically, the degree of . . . [d]efendant's participation in the fraudulent scheme." *United States v. Greenlight Organic, Inc.*, 419 F. Supp. 3d 1298, 1304-05 (Ct. Int'l Trade 2019). The Court explicitly rejected the plaintiff's attempt to "impute knowledge to [a defendant] merely by virtue of his position of power and influence," finding that such allegations "lack[ed] the factual precision or substantiation required under USCIT Rule 9(b)." *Id.* at 1305. Likewise, in *United States v. Chow*, the Court dismissed a complaint due to "a lack of particularity . . . concerning not only *how* [defendant] aided and abetted the alleged fraud, but *what* it was he did to aid and abet the alleged fraud." *United States v. Chow* , 841 F. Supp. 1286, 1290 (Ct. Int'l Trade 1993) (emphasis in original).

On the other hand, the Court has found fraud to be pled with sufficient particularity where the complaint identifies a specific agent or

employee of a company responsible for the false statements requiring, "the claimant to allege at a minimum the identity of the person who made the fraudulent statement." *United States v. Islip*, 22 C.I.T. 852, 869 (1998). The importance of so identifying the source of a fraudulent statement was reinforced in *United States v. Am. Cas. Co. of Reading Pennsylvania*, where the Court found that plaintiff's claims were pled with requisite particularity where the complaint alleged that "[a company], *through its employee* [name of employee], filed . . . , a series of documents with Customs which it knew to contain false representations that Thailand was the country of origin." 91 F. Supp. 3d 1324, 1335–36 (Ct. Int'l Trade 2015) (emphasis added). In *United States v. Islip*, the Court similarly found a complaint to be sufficiently pled where "the 'who' involved [was] Defendant," *i.e.* the named general manager if the company, who was accused of acting on an individual basis. *United States v. Islip*, 22 C.I.T. at 870.

Here, the Government takes the position that broadly naming the Crown Companies as the defendant is tantamount to naming "the person who made the false entry," Am. Comp. at ¶ 12, and then fails to identify a single employee of the Crown Companies responsible for

24

purportedly "suppl[ying] information used to misclassify the subject metal lids" or for "submit[ting] false information to CBP about the proper classification of [those] lids." Am. Compl. at ¶ 19 and 15, respectively. The Government further attempts to broadly "impute knowledge" of the classifications to all "agents and employees" of the Crown Companies, despite the fact that the Crown Companies relied on separate, unnamed brokers to classify can ends from different suppliers in Europe and Canada. Am. Comp. ¶15.

As in *Greenlight Organic, Inc.* and *Chow,* there is no factual support for the Government's conclusory statements that *any* specific "agents and employees of [the Crown Companies] supplied information used to misclassify the subject metal lids;" that those agents and employees "were aware of how to properly classify the subject metal lids they imported;" that they "ultimately made the decisions to falsely classify these metal lids;" or that they "knowingly entered metal lids into the commerce of the United States by means of material false statements, acts, or omissions." Am. Compl. ¶¶ 19, 22, 16 and 17, respectively. Each of the allegations with respect to the Crown Companies' actual knowledge or direction of the purported fraud are

25

speculative and vague and do not provide sufficient detail to meet the Court's particularity threshold.

Although the Amended Complaint notes CBP's issuance of a pre-penalty notice (Am. Compl. ¶ 30) and a joint penalty notice (Am. Compl. ¶ 31), it omits any detail concerning the fact that this matter was commenced in June 2009, when the first of two prior disclosures was filed by the Crown Companies regarding misclassification of can ends with the Port of Milwaukee.[10] Since that time, the Crown Companies have extensively cooperated with CBP.[11] In that context, CBP has interviewed a number of employees at the Crown Companies' headquarters regarding the circumstances of the disclosures, conducted a mitigation conference with counsel for the Crown Companies at the Port of Milwaukee, and reviewed large quantities of additional information supplied by the Crown Companies regarding the

---

[10] Crown USA filed an initial prior disclosure on June 26, 2009, and filed a final written submission on September 23, 2009. A loss of revenue in the amount of $806,548 was tendered by Crown USA as part of the final prior disclosure. CCK filed an initial prior disclosure on October 16, 2009, and filed a final written submission on December 14, 2009. A loss of revenue in the amount of $364,288 was tendered by CCK as part of the final prior disclosure. As the Government acknowledges, the lawful duties and fees owned to CBP have been fully paid. Am. Compl. ¶ 29.

[11] Since 2009, at the request of the Government, the Crown Companies have executed eight statute of limitations waivers related to the filing of this case.

manufacture and import of can ends by the Crown Companies, as well as regarding the corporate structure of the Crown Companies. Despite this more than a decade-long investigation, and the cooperation by the Crown Companies, the Government is unable to allege any specific facts—supported by any documentation, statements, testimony, or other corroborative evidence—establishing that the Crown Companies were responsible for making a material misstatement to the United States with the intent to deceive CBP.

The Government's general allegation that the Crown Companies "knowingly, and thus fraudulently" made material false statements because imports from a different supplier, entered by a separate broker, were classified correctly, Am. Compl. ¶¶ 22-23, 27, is merely conclusory and does not in any manner meet the particularity requirements of Rule 9(b) to establish a fraud case. Without providing the requisite *who* (*i.e.*, the specific identity of the agent or employee of the Crown Companies making the alleged false statement), or *how* (*i.e.*, the motivation or circumstances surrounding the alleged false statement), the Government has "done nothing to separate the conduct alleged," (*i.e.*, the misclassification of can ends), "from a whole host of other

27

possible alternatives." *Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F.3d 1041, 1063 (Fed. Cir. 2012). In other words, the limited and conclusory facts alleged by the Government in its Amended Complaint demonstrate only that it is *possible* that agents or employees of the Crown Companies may have knowingly misclassified can ends to avoid payment of Customs duties on imports, but there is insufficient factual detail to "render these conclusions *plausible*." *Id.* (emphasis added).

Thus, the Government has " failed to 'nudge' [its allegations] 'across the line from conceivable to plausible.'" *Id.* (citing *Twombly*, 550 U.S. at 570); *see also* Hr'g Tr. at 39:22-25 ("[T]he allegations of this complaint are simply a possibility of nefarious conduct on the part of the Defendant, but your complaint doesn't arise to plausibility under *Iqbal* or *Twombley*."). As a consequence, the Court should dismiss Count I as a matter of law.

**B.    The Court Should Dismiss the Government's Gross Negligence Claim as a Matter of Law Because the Government Failed to State a Claim Upon Which Relief Can Be Granted.**

CBP bears the burden of establishing all the elements of gross negligence by a preponderance of the evidence, which "is the general burden assigned in civil cases for factual matters." *St. Paul Fire &*

*Marine Ins. Co. v. United States*, 6 F.3d 763, 769 (Fed.Cir.1993); 19 U.S.C. § 1592(e)(3). A preponderance of the evidence is "the greater weight of evidence, evidence which is more convincing than the evidence which is offered in opposition to it." *United States v. Ford Motor Co.*, 29 C.I.T. 793, 808 (2005), *aff'd in part, rev'd in part*, 463 F.3d 1286 (Fed. Cir. 2006), and judgment clarified, 31 C.I.T. 1178 (2007) (quoting *Hale v. FAA*, 772 F.2d 882, 885 (Fed.Cir.1985)). For purposes of 19 U.S.C. § 1592, gross negligence "results from an act or acts (of commission or omission) done with actual knowledge of or wanton disregard for the relevant facts and with indifference to or disregard for the offender's obligations under the statute." *Ford Motor Co.*, 29 C.I.T. at 845 (citing 19 C.F.R. pt. 171, App. B(C)(2)). "A finding of gross negligence requires the Court to determine that [the defendant's violation] was willful, wanton or reckless or that the evidence before the Court illustrates [the defendant's] utter lack of care." *Id.* at 809 (citing *Mach. Corp. of Am. v. Gullfiber AB,* 774 F.2d 467, 473 (Fed.Cir.1985)).[12] The Court has

---

[12] By contrast, a claim for negligence under Section 1592—which the Crown Companies are again not seeking to dismiss here based on the allegations in the Amended Complaint—"arises out of 'an act or acts (of commission or omission) done through either the failure to exercise the degree of reasonable care and competence expected from a person in the same circumstances in ascertaining the facts or in drawing inferences therefrom....'" *Ford Motor Co.*, 29 C.I.T. at 845 (citing 19 C.F.R.

defined "wanton" as "unreasonably or maliciously risking harm while being utterly indifferent to the consequences." *Id.* (quoting BLACK'S LAW DICTIONARY 1613 (8th ed.2004)). Liability for gross negligence exists where a defendant "behaved willfully, wantonly, or with reckless disregard in its failure to ascertain both the relevant facts *and* the statutory obligation." *Id.* (citation omitted) (emphasis in original). In other words, there must be *something more* than just incorrect HTSUS subheading entries to raise a claim from negligence to gross negligence. The case *United States v. Great Neck Saw Manufacturers, Inc.*, Case No. 17-00049 (Ct. Int'l Trade 2018), demonstrates as much.

In *Great Neck*, the Government brought an action against Great Neck Saw Manufacturer, an importer and manufacturer of hand tools, pursuant to, *inter alia*, 19 U.S.C. § 1592, for civil penalties based on defendant's negligence or gross negligence in the importation of certain merchandise and unpaid customs duties. *See Great Neck*, 311 F. Supp. 3d 1337, 1339. The crux of the dispute was whether the importer

---

pt. 171, App. B(B)(1)). "Section 1592(e)(4) of Title 19 of the United States Code derogates from common law negligence (*i.e.*, duty, breach, causation, and injury) by shifting the burden of persuasion to the defendant to show lack of negligence." *Id.* Thus, to state a prima facie case of negligence, Customs must merely allege "that the materially false act or omission occurred." *Id.*, citing 19 U.S.C. § 1592(e)(3).

improperly deducted certain commission payments, including *after* "being explicitly notified by Customs, as early as June 28, 2007, that the commissions were non-deductible." Id.; *see also Great Neck* Compl. at ¶¶ 22-24 (emphasis added). Great Neck filed a motion to dismiss on November 6, 2017 [ECF No. 18], and the Government opposed. The Court denied Great Neck's motion to dismiss and held that the Government plausibly alleged a claim for a civil penalty for a violation of section 1592(a) based on defendant's alleged negligence *prior to* June 28, 2007, and gross negligence *after* June 28, 2007. *See Great Neck*, 311 F. Supp. 3d at 1342; *see also* Great Neck Compl. ¶ 24 ("Given the explicit notice that had been provided by Customs to [Great Neck] in the Form 29, [Great Neck's] continued deduction of the five-percent commission amount to more than mere negligence."); ¶ 36 ("[Great Neck's] material false statements . . . prior to June 27, 2007 were, at a minimum, the result of negligence . . . [and] after June 28, 2007 constituted gross negligence . . . .").

Unlike here, the Government in *Great Neck* did not overreach by alleging fraud, and instead sought penalties for violations of 19 U.S.C. §§ 1592(c)(2) (gross negligence) or (c)(3) (negligence), with a clear

distinction between the two claims tied to the Government's allegations that it notified Great Neck that the commissions were nondeductible on a specific date, but Great Neck *continued to deduct them anyway*. *See Great Neck*, 311 F. Supp. 3d at 1342; *see also* Great Neck Compl. ¶¶ 22-24, 36. Here, the Government alleges no facts that suggest the Crown Companies supplied the classifications at issue to the different brokers handling shipments of can ends from different parts of the world, or that it was in fact the same agent(s) or employee(s) within the Crown Companies who actually supplied such information to the brokers, or that anyone at the Crown Companies was even aware that the classifications being used were inconsistent. Moreover, the Government does not allege any facts to show a turning point between negligence and gross negligence like the pivotal fact in *Great Neck*.  There is nothing new in the Amended Complaint that suggests any mislabeling by a broker on can ends imported in Europe was done with actual knowledge of or wanton disregard for the relevant facts (*i.e.*, the correct HTSUS subheading).

Moreover, this case is distinguishable from other past cases where the Court has found that the incorrect classification of merchandise

amounted to "indifference to or disregard for [a defendant's] statutory obligations." *United States v. Sterling Footwear, Inc.*, 279 F. Supp. 3d 1113, 1138 (Ct. Int'l Trade 2017). In *United States v. Sterling Footwear, Inc.*, the Court found that defendant acted with gross negligence where it "consistently instructed its brokers to enter [merchandise] . . . without regard for whether that was the correct tariff provision" and continued to issue that instruction after CBP "alerted [defendant] to the misclassification." 279 F. Supp. 3d at 1138-39. The Court premised its finding on the defendant's "fail[ure] to submit any post-entry amendments despite its agreement to provide them" during a meeting with CBP officers. *Id.* at 1139. Likewise, in *United States v. Cruzin Cooler, LLC*, the Court found that a "defendant's level of culpability constituted gross negligence" where, "after being alerted to misclassifications by Customs, the defendant continued to make additional entries using the incorrect classification." *United States v. Cruzin Cooler, LLC* , 459 F. Supp. 3d 1366, 1378 (Ct. Int'l Trade 2020).

In this case, by contrast, there is no allegation that CBP (or anyone) alerted the Crown Companies to a potential misclassification during the Subject Period and that, despite such notification, the Crown

33

Companies continued to make additional entries using the incorrect classification (or instructed the broker to do so). To the contrary, and unlike the defendants in *Great Neck Saw Manufacturers, Inc.*, *Sterling Footwear, Inc.*, and *Cruzin Cooler, LLC*, once they became aware of the potential misclassification, the Crown Companies timely sought to correct the classifications by filing valid prior disclosures, paying the lawful duties and fees owed, and fully cooperating with CBP's investigation for over a decade.

The Amended Complaint fails to identify any conduct or omission on the part of the Crown Companies that might support its claim of gross negligence. Instead, the Government alleges gross negligence solely based on an apparent lack of oversight of different brokers handling shipments of can ends from two different parts of the world. Am. Compl. ¶ 15, 22-23. Such an allegation may support pleading a claim for negligence at this stage, but it is wildly insufficient to sustain a claim of gross negligence. Thus, this Court should, as a matter of law, dismiss Count II since the Government's allegations simply do not contain facts sufficient to support a gross negligence claim.

## IV.  CONCLUSION

As the Scottish proverb notes: "You can't make a silk purse from a sow's ear."  Here, the Government has made several edits and revisions to the original Complaint which it suggests have beefed up the Complaint such that it must now meet the heightened pleading standard required to maintain claims for fraud or even for gross negligence.  But upon a close inspection of each new allegation, the conclusion is ineluctable: the Amended Complaint, devoid of necessary facts to support any claim beyond a claim of negligence, is still not a silk purse.

The Court should not allow the Government to maintain claims for fraud or gross negligence when it cannot, even upon re-pleading and with 10 years of investigation to back it up, tell the Court who made the alleged false statements, what exactly was said, to whom they were made, whether the brokers coordinated with each other, which individual from the brokers was involved, etc.  For the reasons set forth herein, the Government has once again failed to state a claim upon which relief can be granted with respect to Counts I and II because it has yet again failed to plead fraud with particularity and simply has not and cannot allege sufficient facts establishing fraud or gross negligence.

Thus, the Court should again grant the Crown Companies' Motion to Dismiss Counts I and II of the Amended Complaint, but this time, *with prejudice*, and deny any request to re-plead.

Respectfully Submitted,

**/s/ Jackson D. Toof**
Jackson D. Toof
Leah N. Scarpelli

**ArentFox Schiff LLP**
1717 K Street, NW
Washington, DC 20006
Tel: (202) 857-6000
Fax: (202) 857-6395
Email:   jackson.toof@afslaw.com
              leah.scarpelli@afslaw.com

*Counsel for Defendants Crown Cork & Seal, USA, Inc. and Crown Cork & Seal Co., Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Jackson D. Toof, an attorney with the law firm ArentFox Schiff LLP, which represents Defendants in this action, relying up on the word count feature of the word processing program used to prepare this motion, hereby certify that this motion complies with the word count limitation under the Court's Chamber Procedures, and contains 7,497 words.