# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE M. MILLER BAKER, JUDGE

|  |  |  |
|---|---|---|
| THE UNITED STATES | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CROWN CORK & SEAL, USA, INC. | ) | Court No. 21-361 |
| and CROWN CORK & SEAL CO., INC., | ) | |
| | ) | |
| Defendant, | ) | |

## THE UNITED STATES' OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

BRIAN M. BOYNTON
Assistant Attorney General

PATRICIA M. MCCARTHY
Director

FRANKLIN E. WHITE, JR.
Assistant Director

OF COUNSEL

PHILIP HISCOCK
Senior Attorney
U.S. Customs and Border Protection
Office of the Associate Chief Counsel
610 S. Canal St., Ste. 767
Chicago, IL 60607

July 27, 2022

WILLIAM KANELLIS
US Department of Justice
Commercial Litigation Branch
1100 L ST NW, Suite 10000
Washington, D.C.  20009
Tel:  (202) 532-5749


Attorneys for Defendant

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ..................................................................iii

INTRODUCTION .........................................................................4

SUMMARY OF FACTS ...................................................................4

    I.    Crown Holdings, CCS, And CCS USA ................................4

    II.    Crown Companies' Fraudulent Entry Of Metal Lids ...........................5

    III.    Administrative Proceedings And Penalty ...........................10

DISCUSSION OF LAW ..................................................................11

    I.    Applicable Legal Standards ......................................11

        A.    Rule 8 ..............................................12

        B.    Rule 9b ..............................................13

            i.    *Purpose and Application* ..............................13

            ii.    *Rule 9(b) Is Satisfied Where A Complaint Identifies the Dates, Places and Persons Surrounding Fraudulent Activity* ...............................................14

            iii.    *Complex And Corporate Fraud Schemes* ....................17

    II.    The Amended Complaint Complies With Rules 8 and 9(b) .............22

        A.    The Amended Complaint Supplies A Factual Account of Defendants' Fraud That is "Plausible On Its Face" ................22

        B.    The Amended Complaint Details The "Who, What, When, Where, And How" Of The Fraud Scheme ...............................23

C.    Defendants Have Demonstrated In Their Filings With This
        Court That The Government Has Satisfied Rule 9(b) .............24

D.    Defendants Arguments Regarding Intent Are Meritless .........27

E.    Defendants' Argument Regarding Gross Negligence Is
        Meritless....................................................................... 28

CONCLUSION ........................................................................................32

# TABLE OF AUTHORITIES

<u>**CASES**</u>                                                                                              <u>**PAGE(S)**</u>

*Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*,
    404 F. 3d 566 (2nd Cir. 2005)....................................................................27

*Allied Vision Group, Inc. v. RLI Vision Corp.*, No. 95C3783,
    1997 U.S. Dist. LEXIS 10805 (N.D. Ill. July 18, 1997)..............................20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................*passim*

*BJC Health Sys. v. Columbia Cas. Co.*,
    478 F. 3d 908 (8th Cir. 2007)..................................................................16

*Cedars-Sinai Med. Ctr. v. Watkins*,
    11 F. 3d 1573 (Fed. Cir. 1993)................................................................11

*Chesbrough v. VPA P.C.*,
    655 F. 3d 461 (6th Cir. 2011)..................................................................17

*Conley v. Gibson*,
    355 U.S. 41 (1957)..........................................................................12, 31

*Currie v. Cayman Resources Corp.*,
    595 F. Supp. 1364 (N.D. Ga. 1984)......................................................13, 26

*DiLeo v. Ernst & Young*,
    901 F. 2d 624 (7th Cir. 1990)............................................................2, 13, 14

*E-Shops Corp. v. U.S. Bank Nat. Ass'n*,
    678 F. 3d 659 (8th Cir. 2012)................................................................16, 30

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
    575 F. 3d 1312 (Fed. Cir. 2009)............................................................*passim*

*Fulk v. Bagley*,
    88 F.R.D. 153 (M.D.N.C. 1980)................................................................13

*Gould, Inc. v. United States*,
    935 F. 2d 1271 (Fed. Cir. 1991)......................................................................11

*Howard v. Cycare Sys., Inc.*,
    128 F.R.D. 159 (D. Mass. 1989)....................................................................20

*Ibe v. Jones*,
    836 F. 3d 516 (5th Cir. 2016)........................................................................27

*Konover Const. Corp. v. ATC Assos. Inc.*,
    2012 WL 1552432 (D. Md. Apr. 27, 2012)...................................................21

*KVOS, Inc. v. Asso. Press*,
    299 U.S. 269 (1936)......................................................................................11

*Lerner v. Fleet Bank, N.A.*,
    459 F. 3d 273 (2d Cir. 2006).........................................................................28

*Lifetime Industries, Inc. v. Trim-Lok, Inc.*,
    869 F.3d 1372 (Fed. Cir.  2017)..............................................................22, 32

*Melder v. Morris.*,
    27 F. 3d 1097 (5th Cir. 1994)........................................................................27

*Mizzaro v. Home Depot, Inc.*,
    544 F. 3d 1230 (11th Cir. 2008)....................................................................21

*Moore v. Kayport Package Exp., Inc.*,
    885 F. 2d 531 (9th Cir. 1989)........................................................................18

*New York Central RR Co. v. United States*,
    212 U.S. 481 (1909)........................................................................................8

*Rubenstein v. Neiman Marcus Grp. LLC*,
    687 Fed. Appx. 564 (9th Cir. 2017)..............................................................18

*Schwartzco Enters. LLC. v. TMH Mgmt., LLC*,
    60 F. Supp. 3d 331 (E.D.N.Y. 2014).............................................................27

*Square One Armoring Servs. Co. v. United States*,
  152 Fed. Cl. 536 (Fed. Cl. 2021)....................................................................21

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007).........................................................................................13

*Tri-Lift NC, Inc. v. Drive Automotive Industries of America, Inc.*,
  2021 WL 131017 (D.S.C. Jan. 13, 2021).......................................................19

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................12, 31

*United States ex. rel. Stepe v. RS Compounding LLC*,
  325 F.R.D. 699 (M.D. Fla. 2017)....................................................................19

*United States ex rel. Anita Silingo v. WellPoint, Inc.*,
  904 F.3d 667 (9th Cir. 2018)........................................................16, 24, 26, 33

*United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*,
  501 F. 3d 493 (6th Cir. 2007)......................................................15, 17, 19, 23

*United States ex rel. Chorches for Bankr. Estate of Fabula v. Am. Med.
  Response, Inc.*, 865 F. 3d 71 (2nd. Cir. 2017)...............................................16

*United States ex rel. Clausen v. Lab Corp. of Am., Inc.*,
  290 F. 3d 1301 (11th Cir. 2002)......................................................................15

*United States ex rel. Ellis v. Sheikh*,
  583 F. Supp. 2d 434 (W.D.N.Y. 2008)...........................................................17

*United States ex rel. Grubbs v. Kanneganti*,
  565 F. 3d 180 (5th Cir. 2009)..........................................................................16

*United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*,
  360 F. 3d 220 (1st Cir. 2004)....................................................................14, 15

*United States ex rel. Keeler v. Eisai, Inc.*,
  568 Fed. Appx 783 (11th Cir. 2014)...............................................................15

*United States ex rel. Prose v. Molina Healthcare of Il., Inc.*,
    10 F. 4th 765 (7th Cir. 2021) ............................................................................13

*United States ex rel. Roby v. Boeing Co.*,
    184 F.R.D. 107 (S.D. Ohio 1998) .....................................................................20

*United States ex rel. Scott v. Actus Lend Lease*,
    No. CV 08-07940-RGK (SSx), 2011 WL 13177635 (C.D. Cal. Apr. 22,
    2011) ..................................................................................................................18

*United States ex rel. Semtner v. Medical Consultants, Inc.*,
    170 F.R.D. 490 (W.D. Okla. 1997) ...................................................................17

*United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*,
    472 F. 3d 702 (10th Cir. 2006) ..........................................................................15

*United States ex rel. Trombetta v. EMSCO Billing Services, Inc.*,
    Nos. 96C226, 99C151, 2002 WL 34543515 (N.D. Ill. Dec. 5, 2002)...........17

*United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
    525 F. 3d 370 (4th Cir. 2008) ............................................................................27

*United States v. Chow*,
    841 F. Supp. 1286 (Ct. Int'l Trade 1983) .........................................................20

*United States v. Great Neck Saw Manufacturers, Inc.*,
    311 F. Supp. 3d 1337 (Ct. Int'l. Trade 2018) ..................................................30

*United States v. Greenlight Organic, Inc.*,
    419 F. Supp. 3d 1298 (Ct. Int'l Trade 2019).....................................................20

*United States v. Islip*,
    18 F. Supp. 2d 1047 (Ct. Int'l Trade 1998)...............................................13, 14

*United States v. Mariner Health Care, Inc.*,
    F.Supp.3d 938, 948 (N.D. Cal. 2021) ................................................................8

*United States v. Maverick Marketing, LLC*,
    295 F. Supp. 3d 1349 (Ct. Int'l Trade 2018)..............................................11, 12

*United States v. Priscilla Modes, Inc.*,
    9 CIT 598 (1985)..................................................................................13

*United States v. Sterling Footwear, Inc.*,
    279 F. Supp. 3d 1113 (Ct. Int'l Trade 2017)................................31

*United States v. Trek Leather, Inc.*,
    767 F.3d 1288 (Fed. Cir. 2014)....................................................18

## STATUTES

19 U.S.C. § 1592......................................................................................9, 11

19 U.S.C. § 1592(a).....................................................................................12

19 U.S.C. § 1592(a)(1).................................................................................18

19 U.S.C. § 1592(a)(1)(A)(i-(ii) ..................................................................12

28 U.S.C. § 1582(1) (2012)..........................................................................11

## RULES

USCIT Rule 8........................................................................................11, 12

USCIT Rule 8(a)...........................................................................................31

USCIT Rule 9(b)......................................................................................*passim*

USCIT Rule 8(a)(2).......................................................................................12

USCIT Rule 12(b)(6) ....................................................................................12

## OTHER AUTHORITIES

5 Fed. Prac. & Proc. Civ. § 1241 (4th ed.)..................................................14

5 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE
    § 1298 (2d ed. 1990)....................................................................17

5 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE
  § 1233 (2d ed. 1990) .................................................................................. 18

2 Moore's Federal Practice § 9.03 (3d ed. 1998) ..................................................... 14

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  THE HONORABLE M. MILLER BAKER, JUDGE**

| | | |
|---|---|---|
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Court No. 21-361** |
| | ) | |
| | ) | |
| **CROWN CORK & SEAL, USA, INC.** | ) | |
| **and CROWN CORK & SEAL CO., INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**THE UNITED STATES' OPPOSITION TO**
**<u>DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

Pursuant to Rules 8, 9 and 12 of the Rules of the United States Court of International Trade (USCIT R.), the United States respectfully submits this opposition to defendants' motion to dismiss (Mot., ECF No. 24) the amended complaint (Am. Compl., ECF No. 23) filed by the United States on June 8, 2022. For the reasons stated below, defendants' motion should be denied.

**<u>INTRODUCTION</u>**

From 2004 through 2009, defendants Crown Cork & Seal Co., Inc. (CCS) and Crown Cork & Seal, USA, Inc. (CCS USA) conspired with others to misclassify metal lids imported from Europe into the United States. Defendants caused 543 false statements to be submitted to the United States over this six-year

period, allowing them to avoid paying more than $1.2 million in duties. They knew these statements were false: They were sophisticated importers operating within a billion-dollar conglomerate that for 100 years had specialized in the manufacture of these lids. They imported these lids from related companies. And while they *falsely classified* lids from Europe, at the same time they *correctly classified* the *same lids* when importing from them Canada, for which no duties were owed. This was no coincidence or mistake; it was a concerted strategy.

The amended complaint set forth these facts and other circumstances depicting a narrative of fraud that was "plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Moreover – and fatal to defendants' motion to dismiss – for *each* of the *543 entries* made by CCS and CCS USA, the amended complaint detailed the entry number, the *date of entry*, the *place of entry*, the *false classification* made by defendants, the *correct classification* of these metal lids, the correct duty rate, the amount of duties they avoided paying for each entry (*i.e.*, the loss of revenue), and the value of each entry, among other things.

In other words, for *each* of defendants' 543 fraudulent entries, the amended complaint sets forth "'who, what, when, where and how' of the alleged fraud." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). That is the law of this Circuit and every other. And accordingly, it is the law of this Court.

2

Defendants would have the Court abandon these precedents.  First, they dispute and debate the facts detailed in the amended complaint, as if this were their closing argument to the jury.  Mot. at 11-14.  Second, they set aside *Iqbal's* dictate that a Court must only "determine whether [facts in a complaint] plausibly give rise to an entitlement to relief," 556 U.S. at 662 (2009), and announce a new rule that this complaint must detail the factual minutiae underlying defendants' 543 separate acts of fraud over a six-year period.  Mot. at 14-16.  *Third*, they declare that a complaint against a corporation must identify specific employees who engaged in the fraud and must detail what conduct they engaged in.  *Fourth*, they attempt to apply Rule 9(b)'s standard for fraud to the Government's gross negligence claim, falsely asserting that the Supreme Court in *Iqbal* addressed gross negligence claims.  Mot. at 4-5.

Defendants' arguments are wholly unmoored from the caselaw surrounding Rule 9(b).  First, Rule 9(b) motions are not fora for debating facts.  Disputes of fact will be resolved at trial by the jury.  Second, a complaint need not enumerate each discrete act underlying a fraud scheme – it need only detail facts sufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 663.  Third, courts have uniformly held that complaints which allege fraud by corporations need not, and often cannot, identify employees or agents who executed the fraud, or how they did it.  Finally,

Rule 9(b) does not apply to claims of gross negligence:  neither *Iqbal* nor any other court has ever suggested this.  And defendants otherwise offer no coherent legal theory for a dismissal of the gross negligence count in this instance.

## SUMMARY OF FACTS

The companies named in the amended complaint – from CCS, CCS USA, to the numerous metal lid manufacturers in Europe and Canada (Crown Companies) – were and are affiliated with one another and controlled by the same company, Crown Holdings, Inc.  They shared a business purpose: the manufacture and sale of metal lids and can ends.  The inter-relatedness and common purpose of these companies is significant, because they impel the inference that defendants knew what they were importing and exporting, and how to classify this merchandise.  These relationships defeat the notion that their categorical misclassification of lids imported from Europe over six years was an inadvertent mistake or an extraordinary coincidence, as they would have this Court believe.

## I.   Crown Holdings, CCS, And CCS USA

Crown Holdings is a multi-billion dollar international conglomerate of companies that, in one form or another, has operated for more than a century.  Crown Holdings represents itself to be "a worldwide leader in the design, manufacture and sale of packaging products for consumer goods."  *See* Ex. 1.  At

the end of 2004, Crown Holdings operated 185 plants along with sales and service facilities throughout 43 countries and globally employed 27,600 persons.

Crown Holdings, CCS, and CCS USA were and are in the business of selling metal lids and can ends. Each word in their company names – Crown, Cork and Seal – denominates an end or seal of some sort. These companies have engaged in significant business activity. In 2004, the consolidated net sales for the Crown Holdings companies was $7.2 billion. *Id.* That year Crown Holdings sold $2,324,000,000 worth of metal food cans and ends. *See id.*, p. 59. Five years later, in 2009, Crown Holdings' net sales increased to $7.9 billion, of which, $2.6 billion was derived from the sale of metal food cans and ends. *See* Ex. 2. At the end of 2020, the company employed 33,000 people and its net sales totaled $11.6 billion, *See* Ex. 3. The amended complaint described how these companies operated at the same business address and had the same executive officers.

## II.   Crown Companies' Fraudulent Entry Of Metal Lids

Between June 27, 2004 and May 11, 2009 (the subject time period), CCS, CCS USA and the Crown Companies together caused the entry into U.S. commerce of 543 entries of metal ends, or lids, for cans. These lids are commonly used to seal metal food containers and have pull tabs that enable consumers to easily open the containers to access the contents. It is undisputed that these metal lids should be described and classified as "Stoppers, caps and lids (including

**crown corks**, screw caps, and pouring stoppers), capsules for bottles, threaded bungs, bung covers, **seals** and other packing accessories, and parts thereof, of base metal:  Other [than Crown corks (including **crown seals** and caps), and parts thereof]" under subheading 8309.90.0000 (Subheading 8309.90) of the Harmonized Tariff Schedule of the United States (HTSUS) (emphasis supplied).

Companies importing metal lids under Subheading 8309.90 during the subject time period paid a 2.6 percent *ad valorem* duty rate.  However, if these metal lids were imported from Canada, they were exempted from duty by the North American Free Trade Agreement (NAFTA).

In the amended complaint, we describe how, during the subject time period, CCS and CCS USA imported metal lids from Canada from Crown Metal Packaging Canada LP, correctly using Subheading 8309.90.  During this same period, CCS and CCS USA also imported metal lids from several European manufacturers also controlled by Crown Holdings, including Crown Emballage (France); Crown Packaging UK, PLC (now known as Crown Packaging UK LTD) and Crown Aerosols (UK).  The complaint described that for imports of metal lids from Europe, CCS and CCS USA used HTSUS subheading 7326.90.1000 – "Other articles of iron or steel: Other: Of tinplate." (Subheading 7326.90).  Importers of merchandise entered under Subheading 7326.90 were not required to pay a duty.

Neither CCS nor CCS USA dispute that they falsely declared that the metal lids from Europe fell under Subheading 7326.90.  Neither CCS nor CCS USA dispute that the proper classification for these metal lids was Subheading 8309.90. Defendants engage in rhetorical gamesmanship by asserting that their false statements were not "false statements," Mot. at 13-14, but their wordplay belies the sober reality that (1) they caused these false statements to be submitted to the Government, and (2) by these false statements, they immediately deprived United States taxpayers of more than $1.2 million.

Among other things, the amended complaint adds new context to the facts described in the original complaint, dispelling misleading claims defendants made during oral argument of their first motion to dismiss.  Foremost, we clarified the brokers' role in these transactions:  Contrary to defendants' suggestion that brokers could or would somehow cause the fraud, in the amended complaint we explained that CCS and CCS USA – and not their brokers – directed the classification of these metal lids.  In fact, defendants' brokers "never possessed, observed, or otherwise controlled any of the subject metal lids."  Am. Compl. ¶ 15.  We further detailed how the brokers "relied exclusively upon representations from CCS, CCS USA, . . . for descriptions, entry information and classifications relating to these metal lids."  *Id.*  We also alleged how the defendants and their brokers all

understood that CCS and CCS USA bore the responsibility for submitting accurate information to CBP.  Am. Compl. ¶¶ 15-16.

The amended complaint also addresses the fact that the agents of CCS and CCS USA were acting within the scope of their responsibilities at CCS and CCS USA when they caused these 543 false statements to be submitted to the Government.  Am. Compl. ¶ 19.  These facts add further context to CCS and CCS USA's false statements, because the conduct of defendants' agents and employees acting within the scope of their employment will, by law, be imputed to CCS and CCS USA.  *See New York Central RR Co. v. United States*, 212 U.S. 481 (1909), and progeny.

We further alleged that defendants submitted these false statements knowingly, detailing circumstances which foreclose the notion that this was inadvertent.  Am. Compl. ¶¶ 22-24.  We described how, during the subject period, defendants used the correct Subheading 8309.90 "more than 99 percent of the time when importing metal lids from Canada."  Am. Compl. ¶ 22.  However, when importing lids from Europe, 99 percent of the time defendants falsely declared that the metal lids fell under Subheading 7326.90.  Am. Compl. ¶ 23.  Taken together, these events reduce to nearly zero the statistical probability that defendants' misclassification of lids from Europe could have been inadvertent or coincidental. In other words, our amended complaint makes evident the extraordinarily high

probability that defendants intentionally misclassified these metal lids. *See*, *e.g.*, *United States v. Mariner Health Care, Inc.*, F. Supp.3d 938, 948 (N.D. Cal. 2021) (statistical probabilities along with "who, what, when, where, & how" defeated Rule 9(b) motion).

In the amended complaint, we also provided additional context to the original complaint by explaining the information attached in Exhibit A of the amended complaint. We now describe how Exhibit A details, for each of the 543 false statements,

> the specific circumstances underlying each entry, including: (1) the person who made the false entry (*i.e.*, CCS or CCS USA); (2) the entry number; (3) the correct [HTSUS subheading] that should have been used by CCS and CCS USA to enter the subject metal lids; (4) the duty rate associated with the correct HTSUS subheading; (5) the date the subject metal lids were entered into the United States; (6) where – *i.e.*, the port at which – these falsely classified metal lids entered the United States; (7) the fact that CCS and CCS paid no duties on the metal lids falsely classified; (8) the exact amount of duties that CCS and CCS USA should have paid for the metal lids they imported, if they had been correctly classified; (10) the total revenue lost as a result of CCS or CCS USA's false statement; and (11) the value of the metal lid underlying the entry.

Am. Compl. ¶ 12. In sum, the amended complaint elaborates upon how Exhibit A to the complaint identified the "who, what, when, where and how" – of each and every one of the 543 falsified entries made by defendants.

### III.   <u>Administrative Proceedings And Penalty</u>

On August 8, 2016, U.S. Customs and Border Protection (CBP) issued a pre-penalty notice to CCS and CCS USA, jointly and severally, alleging fraudulent violations of 19 U.S.C. § 1592, and alternatively, grossly negligent or negligent violations relating for the 543 entries at issue.  The Government could have issued a penalty in the amount of $51,152,746 – the merchandise's domestic value. Instead, it self-mitigated the penalty amount to $18,092,348.96, approximately 35 percent of the maximum penalty it could have imposed.

After receiving the pre-penalty notice, the companies asked for an extension of time to respond, the first of many requests during the administrative penalty phase.  On October 3, 2016, the companies jointly submitted a written pre-penalty response and requested an oral conference.  On November 8, 2016, the companies submitted a supplemental pre-penalty response.  After considering the companies' written and oral presentations, CBP issued the penalty without change, and demanded $26,880 in unpaid duties under section 1592(d).  On March 31, 2017, the companies submitted a check from CCS USA's bank account for the $26,880.28 in unpaid duties.  Neither defendant owes unpaid duties to the Government.

The events at the heart of this fraud scheme occurred more than a decade ago.  The original complaint in this matter was delayed because CCS, CCS USA,

and CBP for years repeatedly entered into statute-of-limitations waivers.  Contrary to defendants' characterization, there were not "ten years" of investigations. Rather, the Government requested communications and evidence from CCS and CCS USA that would bear upon whether their false statements were intentional, but defendants claimed they no longer possessed this evidence – notwithstanding their apparent awareness that such records would be crucial to their defense.

## DISCUSSION OF LAW

### I.    Applicable Legal Standards

This Court possesses exclusive jurisdiction over claims brought under 19 U.S.C. § 1592 pursuant to 28 U.S.C. § 1582(1) (2012).  As the party invoking the Court's jurisdiction, the Government bears the burden of demonstrating that the Court's subject-matter jurisdiction exists.  *See Cedars-Sinai Med. Ctr. v. Watkins*, 11 F. 3d 1573, 1583 (Fed. Cir. 1993) (citing *KVOS, Inc. v. Asso. Press*, 299 U.S. 269 (1936)).

"In deciding a motion to dismiss for failure to state a claim upon which relief can be granted, the court assumes all factual allegations in the complaint to be true and draws all reasonable inferences in favor of the plaintiff."  *United States v. Maverick Marketing, LLC*, 295 F. Supp. 3d 1349, 1351–52 (Ct. Int'l Trade 2018) (citing *Cedars–Sinai Med. Ctr.*, 11 F. 3d at 1584 n.13; *Gould, Inc. v. United States*, 935 F. 2d 1271, 1274 (Fed. Cir. 1991)).  When considering a motion to dismiss,

11

this Court assumes "all well-pled factual allegations are true and indulges all reasonable inferences in favor of the nonmovant." *Gould*, 935 F.2d at 1274.

### A.   <u>Rule 8</u>

USCIT Rule 8 requires that a complaint must include: "(1) a short and plain statement of the grounds for the court's jurisdiction, [] (2) a short and plain statement of the claim showing that the pleader is entitled to relief[,] and (3) a demand for the relief sought[.]" USCIT R. 8(a).  Such a statement must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

USCIT Rules 8(a)(2) and 12(b)(6) together create a standard of pleading that recognizes the imposition of litigation costs must be justified by factual allegations establishing a plausible entitlement to relief.  A complaint must contain sufficient factual allegations "to raise a right to relief above the speculative level" in order to survive a motion to dismiss under Rule 12(b)(6).  *Id.*  Rule 8 "does not require 'detailed factual allegations.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Indeed, the Supreme Court has held that, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

To properly state a claim for relief under 19 U.S.C. § 1592(a), the complaint must include "sufficient facts to show that a person entered or introduced, or

attempted to enter or introduce, merchandise into United States commerce by means of either (i) a material and false statement, document, or act, or (ii) a material omission." *Maverick Marketing,* 295 F. Supp. 3d at 1352 (citing 19 U.S.C. § 1592(a)(1)(A)(i-(ii)).

    **B.**   **Rule 9b**

        *i.  Purpose and Application*

The pleading standard set forth by Rule 8 is heightened in cases where the complaint alleges fraudulent conduct, as "a party must state with particularity the circumstances constituting fraud," but "[m]alice, intent, knowledge and other conditions of person's may be alleged generally." USCIT R. 9(b), *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007). A complaint of fraud "must include informational elements of 'who, what, when, where, and how: the first paragraph of any newspaper story.'" *United States v. Islip*, 18 F. Supp. 2d 1047, 1063 (Ct. Int'l Trade 1998) (quoting *DiLeo*, 901 F. 2d at 627).

Rule 9(b)'s heightened pleading standard is driven by three aims: The first is to ensure "'that allegations of fraud will not be advanced lightly or without some factual basis.'" *United States v. Priscilla Modes, Inc.*, 9 CIT 598, 599 (1985) (quoting *Fulk v. Bagley*, 88 F.R.D. 153, 164 (M.D.N.C. 1980)). Second, "Rule 9 represents a policy decision to protect potential fraud defendants from litigation based on nothing but rumor or speculation." *United States ex rel. Prose v. Molina*

*Healthcare of Il., Inc.*, 10 F. 4th 765, 773 (7th Cir. 2021).  And most importantly, it is to ensure that allegations of fraud in a complaint are "concrete and particularized enough to give notice to . . . enable the defendant[] to prepare a defense[.]" *Currie v. Cayman Resources Corp.*, 595 F. Supp. 1364, 1371 (N.D. Ga. 1984).

> ii.   *Rule 9(b) Is Satisfied Where A Complaint Identifies the Dates, Places and Persons Surrounding Fraudulent Activity*

Although the jurisprudence surrounding Rule 9(b) involves a variety of alleged fraud schemes, courts have been uniform when describing what type of information in a complaint satisfies the rule.  In virtually all cases, this issue will turn upon whether a complaint identifies the dates, place, and persons related to the false claim.  Or, in the words of the Federal Circuit, a complaint alleging fraud must identify "'the who, what, when, where, and how' of the alleged fraud." *Exergen Corp.*, 575 F. 3d at 1327 (quoting *DiLeo*, 901 F. 2d at 627).

It is settled law that, to satisfy Rule 9(b), "the circumstances that must be detailed [in a complaint] include allegations such as the time, the place, the identity of the parties involved, and the nature of the fraud or mistake."  § 1241 Statement of Particular Matters—Fraud, Mistake, and Conditions of Mind, 5 Fed. Prac. & Proc. Civ. § 1241 (4th ed.).  Accordingly, this Court and others have "required the claimant to allege at a minimum the person who made the fraudulent statement; the time, place, and content of the misrepresentation; the resulting injury; and the

method by which the misrepresentation was communicated." *Islip*, 18 F. Supp. 2d

at 1063 (citing 2 Moore's Federal Practice § 9.03, at 9–18 n.12 (3d ed. 1998)).

In *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F. 3d 220

(1st Cir. 2004), the First Circuit supplied an apt description of what may be

required to pass muster under Rule 9(b):

> details concerning the dates of the claims, the content
> of the forms or bills submitted, their identification numbers,
> the amount of money charged to the government, the
> particular goods or services for which the government was
> billed, the individuals involved in the billing, and the length
> of time between the alleged fraudulent practices and the
> submission of claims based on those practices are the types
> of information that may help a [plaintiff] state his or her
> claims with particularity.

*Id.* at 233.  The First Circuit made clear that these desiderata "do not constitute a

checklist of mandatory requirements that must be satisfied by each allegation

included in a complaint" but rather "'some of this information . . . must be pleaded

in order to satisfy Rule 9(b).'" *Id.* (quoting *United States ex rel. Clausen v. Lab*

*Corp. of Am., Inc.*, 290 F. 3d 1301, 1312 n.21 (11th Cir. 2002)).

In practice, courts have long subscribed to the "time-place-person" standard

of Rule 9(b).  Accordingly, courts have granted Rule 9(b) dismissals when a

plaintiff does not plead specific instances of alleged fraud.  *See United States ex*

*rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F. 3d 493, 515 (6th Cir. 2007)

(complaint lacked specific dates for false claims allegedly submitted); *United*

*States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F. 3d 702, 727-28 (10th Cir. 2006) (complaint failed to identify fraudulent claims submitted, or the dates on which they were submitted); *United States ex rel. Keeler v. Eisai, Inc.*, 568 Fed. Appx 783, 797-98 (11th Cir. 2014) (complaint failed to plead specific instances and circumstances of alleged false claims).

On the other hand, where complaints identify specific claims or dates of alleged fraud, courts have consistently held that they pass muster under Rule 9(b). *See, e.g., United States ex rel. Chorches for Bankr. Estate of Fabula v. Am. Med. Response, Inc.*, 865 F. 3d 71, 91-92 (2nd. Cir. 2017) (complaint satisfied Rule 9(b) by pleading the specific dates and contents of misrepresentations); *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 192 (5th Cir. 2009) (complaint listed dates and services fraudulently billed for but not provided to the Government as "likely, circumstantial evidence" of fraud); *United States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 678-79 (9th Cir. 2018) (overturning district court dismissal of a complaint that alleged fraud based on defendant's former employees allegations of conduct providing circumstantial evidence of a fraud scheme). *See, e.g.*, 12A Wright & Miller, App. D Form 13 ("Defendant C.D. on or about ____ conveyed all his property, real and personal [or specify and describe] to defendant E.F. for the purpose of defrauding plaintiff and hindering and delaying the collection of the indebtedness evidenced by the note above referred to.").

16

### iii.  Complex And Corporate Fraud Schemes

Courts have recognized that the Rule 9(b) particularity requirement largely depends on the nature of the fraud alleged.  *See E-Shops Corp. v. U.S. Bank Nat. Ass'n*, 678 F. 3d 659, 663 (8th Cir. 2012) (The level of particularity required [under Rule 9(b)] depends on the nature of a case) (citing *BJC Health Sys. v. Columbia Cas. Co.*, 478 F. 3d 908, 917 (8th Cir. 2007)). Furthermore, the specificity requirement may be relaxed at the pleading stage as an exception in cases where necessary evidence of fraud is in the exclusive control of the defendant or when a fraudulent scheme alleged is complex or occurred over a long period of time. *United States ex rel. Ellis v. Sheikh*, 583 F. Supp. 2d 434, 438-39; *United States ex rel. Trombetta v. EMSCO Billing Services, Inc.*, 2002 WL 34543515, at *3 (N.D. Ill. Dec. 5, 2002); 5 Wright & Miller, FEDERAL PRACTICE & PROCEDURE § 1298, at 647 (2d ed. 1990); *United States ex rel. Semtner v. Medical Consultants, Inc.*, 170 F.R.D. 490, 498 (W.D. Okla. 1997) ("a fraudulent scheme that has occurred over a long period of time with perhaps thousands of billing documents need not be pled with reference to the exact nature of each allegedly fraudulent document."). However, when a plaintiff alleges a "'complex and far-reaching fraudulent scheme' . . . it is insufficient to simply plead the scheme[.]" *Chesbrough v. VPA P.C.*, 655 F. 3d 461, 470 (6th Cir. 2011) (quoting *Bledsoe*, 501 F. 3d at 510-1).

17

In cases of corporate fraud and conspiracies, especially when the fraudulent scheme are complex and proof of the scheme rests within the defendant's knowledge, "[Rule 9(b)] may be relaxed" because "plaintiffs will not have personal knowledge of all of the underlying facts." *Moore v. Kayport Package Exp., Inc.*, 885 F. 2d 531, 540 (9th Cir. 1989).  In such cases, "a pleading is sufficient . . . if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Rubenstein v. Neiman Marcus Grp. LLC*, 687 Fed. Appx. 564, 568 (9th Cir. 2017) (citing *Moore*, at 540).

Therefore, where, as in this case, "the defendant is a corporation,[1] Rule 9(b) requires a claimant to identify the corporate party involved, but when particular evidentiary matters are exclusively within the defendant's knowledge, the claimant is not required to identify specific individuals who may have engaged in the alleged fraudulent activities." *United States ex rel. Scott v. Actus Lend Lease,* 2011 WL 13177635, at *6 (C.D. Cal. Apr. 22, 2011).  Similarly, where a conspiracy is alleged, "courts have recognized that the nature of conspiracies often makes it impossible to provide details at the pleading stage and that the pleader should be

---

1 Section 1592 instructs that "no *person*, by fraud, gross negligence, or negligence – may enter . . . merchandise into the commerce of the United States[.]"  19 U.S.C. § 1592(a)(1) (emphasis supplied). The term "person" includes corporate persons as well as natural persons. *See United States v. Trek Leather, Inc.*, 767 F.3d 1288, 1299 (Fed. Cir. 2014) (*en banc*).

allowed to resort to the discovery process and not be subjected to a dismissal of his

complaint." 5 Wright & Miller, § 1233, at 257.

These decisions emerge from the common-sense recognition that companies

which have committed fraud normally do not divulge information reflecting that

they have committed fraud – to their own employees, agents, or other outsiders, or

to the Government in response to a regulatory inquiry.  To the contrary, experience

and common sense teach that companies which have committed fraud conceal,

obfuscate, alter or destroy such evidence and records, rather than disclosing it.

Thus, it is patently absurd to assert, as defendants do, Mot. at 15, that the

complaint could somehow identify the employees and agents in a conglomerate of

tens of thousands who carried out defendants' fraud scheme, or describe what these

employees and agents did.  Defendants cite to no authority which would require

such a showing at the complaint stage where corporations are defendants, because

there is no such authority.  *Cf. United States ex rel. Bledsoe*, 501 F. 3d 493, 506

(6th Cir. 2007) (rejecting defendant's contention that the plaintiff "must plead the

identity of the specific individual employees within the defendant corporation"

who perpetrated the fraudulent scheme).

More to the point, the specific employees who conducted the fraud are not

the defendants; CCS and CCS USA are: "[I]t is the identity of the corporation, not

the identity of the natural person, that [plaintiff] must necessarily plead with

19

particularity." *Id.* "Rule 9(b) [does not] require the identification of individuals within a defendant corporation." *Tri-Lift NC, Inc. v. Drive Automotive Industries of America, Inc.*, 2021 WL 131017, at *4 (D.S.C. Jan. 13, 2021) (internal quotation omitted); *United States ex. rel. Stepe v. RS Compounding LLC*, 325 F.R.D. 699, 706 (M.D. Fla. 2017) ("The names of the specific employees who submitted the false claims are not required to satisfy Rule 9(b)."); *Howard v. Cycare Sys., Inc.*, 128 F.R.D. 159, 164 (D. Mass. 1989) (rejecting notion that, "the identity of the defendant's agents is necessary in order for the defendant to understand the basis of the fraud claim and to be able to respond to it"); *Allied Vision Group, Inc. v. RLI Vision Corp.*, 1997 U.S. Dist. LEXIS 10805, at *17 (N.D. Ill. July 18, 1997) (Rule 9(b) satisfied where complaint alleged a corporation committed a tort without identifying agents who performed the tortious acts); *United States ex rel. Roby v. Boeing Co.*, 184 F.R.D. 107, 110–11 (S.D. Ohio 1998) ("[defendant corporation's] contention that the [complaint] identify with specificity the persons involved in the misconduct is overreaching. [Rule] 9(b) requires only requires identification of the parties.").

For these reasons, defendants' invocations of *United States v. Greenlight Organic, Inc.*, 419 F. Supp. 3d 1298 (Ct. Int'l Trade 2019), and *United States v. Chow*, 841 F. Supp. 1286 (Ct. Int'l Trade 1983), are misplaced. Each opinion involved complaints filed against individuals (*i.e.*, natural persons) who owned

importers of records, not companies. In both cases, the Court initially assessed that the charged natural person's connection to the fraud was not sufficiently fleshed out. By contrast, the extant matter does not charge individuals – it only charges corporate defendants for their behavior *qua* corporations.

### iv. Rule 9(b) and Defendants' Intent

While USCIT Rule 9(b) requires that the circumstances amounting to fraud be pleaded with specificity, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." U.S. CT. INT'L. TRADE R. 9(b). "Thus, under Rule 9(b), it is sufficient to plead the who, what, when, where, and how of the allegedly false statements and then allege generally that those statements were made with the requisite intent." *Mizzaro v. Home Depot, Inc.*, 544 F. 3d 1230, 1237 (11th Cir. 2008).

The motion to dismiss before this Court questions whether the complaint sufficiently pleads allegations to prove they are entitled to relief. While Rule 9(b) requires particularity when pleading the circumstances of fraudulent activity, such factual specificity is unnecessary for allegations of scienter. Accordingly, "at [the pleading] stage, the proper inquiry is whether the proposed amendment would survive a motion to dismiss, not whether a proposed amendment would succeed on the merits." *Square One Armoring Servs. Co. v. United States*, 152 Fed. Cl. 536, 547 (Fed. Cl. 2021). The only requirement for pleading a defendant's state of mind

is that "the pleadings allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *Exergen*, 575 F. 3d at 1327; *see also Konover Const. Corp. v. ATC Assos. Inc.*, 2012 WL 1552432, at *12 (D. Md. Apr. 27, 2012).

## II.   The Amended Complaint Complies With Rules 8 And 9(b)

### A.   The Amended Complaint Supplies A Factual Account of Defendants' Fraud That is "Plausible On Its Face"

The amended complaint in this case "state[s] a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 663.  The amended complaint identifies each of the 543 false statements made by CCS and CCS USA.  It details how defendants carried out the fraud – *i.e.*, by falsely classifying metal lids under Subheading 7326.90.  It identifies a motive for the fraud – defendants' avoidance of duties on metal lids imported from Europe.  It supplies evidence that CCS and CCS USA submitted these false statements knowing they were false – including the long history of these companies specializing in the manufacture and import of these metal lids, their common ownership and management, their correct classification of lids from Canada, and the virtually nil statistical probability that this false classification could have been the result of a miraculous coincidence.   These facts "allow[] the court to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged." *Lifetime Industries, Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1376 (Fed. Cir.  2017) (citing *Iqbal*, 556 U.S. at 678).

Thus, the facts detailed in the amended complaint allow the Court to employ this heuristic judgment connecting defendants' conduct and the circumstances to the Government's theory of fraud.  On these facts alone, Rule 9(b) has been satisfied, and the Court's inquiry may end here.

### B.    The Amended Complaint Details The "Who, What, When, Where, And How" Of The Fraud Scheme

But the amended complaint provides even more detail beyond the manner and means of this conspiracy:  it specifies the facts and circumstances surrounding each of the 543 entries of metal lids fraudulently submitted by CCS and CCS USA.

In this Circuit, Rule 9(b) is satisfied where a complaint identifies "the who, what, where, when, and how" of a fraud scheme.  *Exergen Corp.*, 575 F. 3d at 1327.  The amended complaint meets this standard.  Specifically, Exhibit A to the complaint identifies, for each of the 543 fraudulent entries:

- <u>Who</u>:  The amended complaint specifies that CCS and CCS USA caused the fraudulent importation of the metal lids at issue. *See ex rel. Bledsoe*, 501 F.3d at 506 ("it is the identity of the corporation, not the identity of the natural person, that the [plaintiff] must necessarily plead with particularity.")

- <u>What</u>:   The amended complaint describes the merchandise imported under the false HTSUS subheading as metal lids.

- <u>Where</u>:  Column A of Exhibit A identifies the port of entry for each entry.  The amended complaint describes how the metal lids were manufactured in CCS-controlled factories in Europe and Canada and then shipped to the United States to the CCS and CCS USA office in Pennsylvania.  The amended complaint also identifies the office address of CCS and CCS USA, from where defendants instructed their brokers to file the false declarations.

23

- <u>When</u>:  Column C of Exhibit A to the amended complaint identifies 543 distinct dates of entry in which the defendant and its affiliated companies imported the metal lids under a false HTSUS subheading.

- <u>How</u>:  The amended complaint details how the scheme was executed through the use of a false HTSUS subheading, in order to avoid the 2.6 percent *ad valorem* duty rate associated with the correct subheading (8309.90.0000).

This exhaustive depiction of "the who, what, where, when, and how" fully satisfies the Government's obligation under Rule 9(b) in this Circuit.  *See Exergen Corp.*, 575 F. 3d at 1327.

**C.  Defendants Have Demonstrated In Their Filings With This Court That The Government Has Satisfied Rule 9(b)**

The primary purpose of Rule 9(b) is to ensure a complaint's allegations are "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge[.]"  *United States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018).  In their reply brief to their first motion to dismiss (ECF No. 14) and the extant motion,  defendants demonstrated that (1) they understand precisely the fraud alleged in the Government's *original* complaint, and (2) they already have prepared defenses for each and every fraudulent submission at issue in this action. Defendants cannot claim that they do not understand the Government's fraud case against them, or that they are unaware of what conduct the amended complaint

24

alleges is fraudulent, or that they are unable to respond to the amended complaint. They have already articulated their defenses.

Defendants' reply brief previewed the defenses they may present at trial. First, defendants offered a prolix excuse for the fraud, claiming that all of the Crown companies at issue were engaged in an "intercompany realignment," ECF No. 14 at 6-7, and that the alleged fraud was, in fact, the result of "an absence of coordination resulting from this major reorganization." *Id.* at 7. Next, defendants offered another defense to the facts alleged in the original complaint, claiming that the fraud was caused by their brokers. *Id.* at 8 (describing "the critical fact that different customs brokers were used to enter those can ends imported from Canada and those imported from Europe"). Later in their reply brief, defendants again described how they will respond to the Government's allegations of fraud: they claimed that the false statements in the complaint were caused because defendants "lacked oversight of different brokers handling shipments of can ends from two different parts of the world." *Id.* at 14. Defendants *repeated* this defense in their extant motion. *See* Mot. at 16. ("the Crown Companies relied on different, external unrelated customs brokers for entering the can ends imported from Canada and those from Europe"). Indeed, their most recent filing reads more like a summary judgment opposition, offering numerous factual explanations as defenses to allegations in the amended complaint. *See* Mot. at 14 (blaming the "lack of

25

oversight of different brokers"); *id.* at 16 (arguing that defendants took corrective action); *id.* at 17 (arguing that not all Canadian lids imported were correctly classified); *id.* at 17-18 (arguing that their agents had no motive to commit the fraud); *id.* at 20-21 (arguing that defendants made too much money in other areas to commit the fraud alleged); *id.* at 21 (blaming the size of these companies and again, defendants' brokers).  These proposed defenses and statements of purported fact make evident that defendants know full well how to respond to every allegation and every act of fraud identified in the amended complaint.

Whether dubious or valid, defendants' litany of factual responses, arguments, and defenses on the merits evince that the Government's allegations of fraud were "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge[.]" *WellPoint, Inc.*, 904 F.3d at 677.  Given that the amended complaint *expanded upon* the allegations in the original complaint, defendants' responses make clear that the allegations of fraud in the amended complaint are "concrete and particularized enough to give notice to . . . enable the defendant[] to prepare a defense[.]" *Currie v. Cayman Resources Corp.*, 595 F. Supp. 1364, 1371 (N.D. Ga. 1984).  In sum, by articulating these defenses, defendants have demonstrated that the Government's amended complaint provides the notice required by Rule 9(b).

### D.   Defendants Arguments Regarding Intent Are Meritless

Apart from disputing facts alleged in the amended complaint, the thrust of defendants' argument is that they did not possess the requisite intent to commit fraud. *See* Mot. at 16-22. As discussed above, these arguments over facts are misplaced here – they are of the type made to a jury at closing argument. But they also reflect a misunderstanding of Rule 9. Contrary to defendants' arguments, Rule 9(b) explicitly states that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." USCIT R. 9(b). A complaint need only "set forth specific facts supporting an inference of fraudulent intent." *Ibe v. Jones*, 836 F. 3d 516, 525 (5th Cir. 2016) (citing *Melder v. Morris*. 27 F.3d 1097, 1102 (5th Cir. 1994)); *see also Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F. 3d 566, 579 (2nd Cir. 2005) (conclusory assertions of intent are sufficient if supported by facts giving rise to an inference of fraudulent intent); *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (same). To accomplish this, a complaint must "alleg[e] facts to show that defendants had both motive and opportunity to commit fraud, or . . . alleg[e] facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Schwartzco Enters. LLC. v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 344 (E.D.N.Y. 2014) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006)).

The amended complaint plainly depicts a motive, opportunity, and intent to commit fraud.  Defendants' opportunity is apodictic:  there is no dispute they *actually submitted* false statements.  The amended complaint set forth their motive to misclassify their metal lid imports from Europe – *i.e.*, avoiding the 2.6 percent tariff levied on metal lid imports, which allowed them to avoid payment of almost $1.3 million in duties.  That more than 99 percent of metal lid imports from Europe were incorrectly classified while more than 99 percent of the same lids Canada were correctly classified, is insuperable circumstantial evidence of intent.  The Government has satisfied Rule 9(b)'s requirements relating to pleading intent.

### E.     <u>Defendants' Argument Regarding Gross Negligence Is Meritless</u>

Defendants attempt to bootstrap onto their Rule 9(b) argument to dismiss the fraud count an argument that the Government's gross-negligence count should be dismissed.  These arguments have no merit.

First, defendants contend that the Government's gross negligence claim should be dismissed because of the Supreme Court's ruling in *Iqbal:*

> As the Supreme Court has made clear, such conclusory pleading does not suffice to state a valid claim of fraud or gross negligence.  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Mot. at 4-5.  Defendants follow through by claiming that the Supreme Court promulgated a "directive" in *Iqbal* regarding gross negligence, and further, claimed that USCIT Rule 9(b) applied to claims for gross negligence:

28

> The Government has not followed the Court's directive and
> again fails to plead fraud and gross negligence with requisite
> particularity pursuant to Rule 9(b).

Mot. at 5.

Defendants' arguments have no basis in law.  Their assertion that *Iqbal*

addressed claims for gross negligence, Mot. at 4-5, is patently false:  *Iqbal* had

nothing to do with gross negligence.  The term "gross negligence" appears

nowhere in *Iqbal*.  *Iqbal* involves a *Bivens* complaint against the U.S. Attorney

General and others.  *See* 556 U.S. at 667. Contrary to defendants' statements, *Iqbal*

has nothing, whatsoever, to do with gross negligence or even mistakes of fact.

Also false is defendants' assertion that Rule 9(b) applies to gross negligence

claims.  *See* Mot. at 5 (the Government failed to plead "gross negligence with

requisite particularity pursuant to Rule 9(b)"). Rule 9(b) has nothing to do with

gross negligence.  The plain language of Rule 9(b) applies to fraud claims and

makes no reference to gross negligence.  Neither this Court nor any other has ever

suggested that Rule 9(b) would apply to actions alleging gross negligence.

Defendants' parade of legal edicts untethered to actual judicial opinions

continues in their conjuring of a new pleading rule for gross negligence claims

from *United States v. Great Neck Saw Manufacturers, Inc.*, 311 F. Supp.3d 1337

(Ct. Int'l. Trade 2018).  In *Great Neck*, the defendant company sought to dismiss

the Government's gross negligence allegations.  *Id.* at 1341.  This Court rejected

the defendant's arguments because the company was explicitly notified by Customs of their wrongdoing and chose to ignore the warning.  *Id.* at 1342-3.  From these facts, defendants adduce a new pleading standard:  they declare, *ipse dixit*, that a claim for gross negligence claim must involve a prior notification, and that a subsequent decision to ignore the warning amounts to gross negligence.  Mot. at 29-32.  They conclude their cause with the inverted legal reasoning that because we do not, in amended complaint, allege that the Government gave defendants a prior warning, as in *Great Saw*, the complaint did not adequately state a claim for relief.  Mot. at 32.  There is simply no legal support for this contrived standard.  And defendants allude to no case which would suggest that a gross negligence case categorically requires such prior notice.  To the contrary, courts have recognized that for purposes of the complaint, "[t]he level of [necessary] particularity depends on the nature of the case."  *E–Shops Corp.*, 678 F.3d at 663.

The amended complaint pleads facts supporting the inference that defendants' false statements were made by gross negligence.  The Government must allege facts that support that defendants "acted 'with actual knowledge of or wanton disregard for the relevant facts and with indifference to or disregard for the offender's obligations under the statute.'"  *United States v. Sterling Footwear, Inc.*, 279 F. Supp.3d 1113, 1138 (Ct. Int'l Trade 2017) (quoting 19 C.F.R. Pt. 171, App. B(C)(2)).  The amended complaint alleges that CCS and CCS USA caused 543

30

false statements to be submitted to CBP.  It depicts how defendants did so

knowingly, explaining that defendants *demonstrated* they understood how to

*correctly classify the metal lids from Europe by correctly classifying the same lids*

*when they came from Canada.*  Am. Compl. ¶¶ 17-23.  Put in the context of *Great*

*Neck*, CCS and CCS USA did not *need* the Government to inform them that their

conduct was wrong – they demonstrated by their contemporaneous conduct that

they were already aware of it.  *Id.*  The amended complaint supplies an adequate

factual basis for the inference that defendants submitted these false statements,

*"with actual knowledge of or wanton disregard for the relevant facts and with*

indifference to or disregard for the offender's obligations under the statute."

*Sterling Footwear, Inc.*, 279 F. Supp.3d at 1138.  It "'give[s] the defendant fair

notice of what the . . . claim is and the grounds upon which it rests.'"  *Twombly*,

550 U.S. at 555 (quoting *Conley,* 355 U.S. at 47); USCIT R. 8(a).

        Not content to merely contrive law from thin air, defendants close by again

attempting to mislead the Court.  Again defendants claim that CCS and CCS

USA's false statements – false statements that these companies, as a matter of fact

and law, caused to be submitted to CBP – were a "mislabeling by a broker[.]"  Mot.

at 32.  This is a flagrant falsehood.  Defendants are fully aware that their customs

brokers never saw or possessed any of these metal lids, never purchased these

metal lids, relied exclusively upon CCS and CCS USA for instruction on how to

classify these metal lids, and certainly could not have "mislabeled" these goods. As the amended complaint describes, CCS and CCS USA purchased these metal lids from their related-company manufacturers, and instructed their brokers on how to classify these lids.  Am. Compl. ¶ 15.  As a matter of law, CCS and CCS USA are responsible for the false statements they caused to be made to CBP – not their brokers.  *Id.* ¶ 16.

## **CONCLUSION**

The amended complaint details a narrative of defendants' fraud that is "plausible on its face," *Iqbal*, 556 U.S. at 663, and permits "the court to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged." *Lifetime Industries, Inc.*, 869 F.3d at 1376.  Appended to the amended complaint is a table listing the "who, what, when, where and how" of *each* of the *543 entries* made by CCS and CCS USA.  *Exergen Corp.*, 575 F. 3d at 1327.  Defendants showed by their counter-arguments and challenges to facts alleged that they fully understand and may defend themselves against the claims at issue – *i.e.*, the amended complaint is "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge[.]"  *WellPoint, Inc.*, 904 F.3d at 677.  The Government has met the standard articulated in Rule 9(b).  Otherwise, defendants supply no coherent support for their argument that the gross negligence claim should be dismissed.

Therefore, for reasons stated above, the Government respectfully requests

that the Court deny defendants' motion to dismiss.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General

PATRICIA M. McCARTHY
Director

*/s/ Franklin E. White, Jr.*
FRANKLIN E. WHITE, JR.
Assistant Director

*/s/ William Kanellis*
WILLIAM KANELLIS
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street, NW, Suite 10000
Washington, D.C.  20009
(202) 532-5749

Attorneys for Plaintiff

OF COUNSEL:
PHILIP HISCOCK
Senior Attorney
U.S. Customs and Border Protection
Office of the Associate Chief Counsel
610 S. Canal St., Ste. 767
Chicago, IL 60607

Dated:  July 27, 2022

CERTIFICATE OF COMPLIANCE

I, William Kanellis, an attorney in the Civil Division, Commercial Litigation Branch of the U.S. Department of Justice, who is responsible for the Government's opposition to defendants' motion to dismiss dated July 27, 2021, relying upon the word-count feature of the word-processing program used to prepare the pleading, certify that this filing complies with the word-count limitation under the Court's chambers procedures, and contains 7,676 words.

*/s/ William Kanellis*